[Sac. No. 1581. In Bank.—March 11, 1908.]

## CONGREGATIONAL CHURCH BUILDING SOCIETY, Respondent, v. E. B. OSBORN et al., Appellants.

RELIGIOUS CORPORATIONS—AID TO CHURCH BY BUILDING SOCIETY—MORT-GAGE CONDITIONS SECURING APPLICATION OF MONEY—STATUTE OF LIMITATIONS.—Where a Congregational church building society advanced money to aid in the erection of a Congregational church, secured by mortgage, under an instrument the main purpose of which was to secure the application of the money to compel the continuous use of the property as a Congregational house of worship and to prevent a different use, and which contained specific and general conditions for the performance of the duties of the church, upon breach of which, the money secured was to be immediately due and payable, without notice or demand, and the property sold to pay the same, the statute of limitations does not begin to run against the will of the building society for breach of specific conditions known to exist more than four years before suit, which it must overlook and waive by acquiescence; and upon foreclosure of the mortgage for alleged breach of all the conditions, which is admitted by the answer, it is to be presumed that the cause of action is not barred by the statute of limitations.

ID.—PRESUMPTION AS TO CONTINUED USE OF HOUSE OF WORSHIP.—It is to be presumed that public worship was maintained, and the general functions and work of the church performed until a time within the period of limitation. These conditions constitute the principal matters intended to be secured, and the principal inducement for the money paid in aid of the church.

APPEAL from a judgment of the Superior Court of Stanislaus County. L. W. Fulkerth, Judge.

The facts are stated in the opinion of the court.

P. H. Griffin, for Appellants.

The cause of action accrues when the plaintiff had a right of action for breach of the conditions and was clearly barred by the statute of limitations of four years after such breach. (Code Civ. Proc., secs. 337, 343; Civ. Code, sec. 2911; *Bissel v. Forbes*, 1 Cal. App. 606, 82 Pac. 698.)

Dennett & Walthall, for Respondent.

Stipulations as to an earlier maturity on failure to pay taxes, insurance, etc., do not shorten the statute of limitations. (20 Am. & Eng. Ency. of Law, p. 932, and cases cited; *Belloc* v. *Davis,* 38 Cal. 249; *Richards* v. *Daley,* 116 Cal. 336, 46 Pac. 220.) Mortgages like this are recognized as containing just and equitable provision for the protection of funds in aid of the church. (*Board of Church Erection etc.* v. *First Presbyterian Church,* 19 Wash. 455, 53 Pac. 671.) The statute does not run upon a continuing contract. (*McCay* v. *McDowell,* 80 Iowa, 146, 45 N. W. 730; *Lane* v. *Wingate,* 25 N. C. 326; *Jackson* v. *Mull,* 6 Wyo. 55, 42 Pac. 603; *Louisville R. Co.* v. *Pitman,* 21 (Ky.) Law Rep. 1027, 53 S. W. 1040.)

SHAW, J.—This is an action to foreclose certain liens created by two instruments in writing, executed by the First Congregational Church Society of Turlock, covering the land on which its house of worship is situated. Plaintiff had judgment and the defendants appeal.

The first instrument was executed on October 18, 1889, to the American Congregational Union, a corporation, which has since merged into and become the Congregational Church Building Society. The second was executed to the plaintiff corporation by name on February 5, 1896. The two instruments are alike in form in other respects. The sole question presented is whether or not the action is barred by the four years' statute of limitation. For convenience we will consider only the instrument of February 5, 1896.

The instrument in question is very peculiar in character, and, so far as we have been able to ascertain, such instruments have never been the subject of judicial construction. From its terms it may be inferred that the plaintiff is, as its name indicates, a society organized and carried on for the purpose of receiving and applying contributions to aid in the erection of houses of worship for use by Congregational churches. In order to present the case properly it will be necessary to state somewhat fully the contents of the instrument. It recites that, upon the application of the Turlock Congregational Church Society, the Building Society had provided aid to the amount of $432.75 to enable the Turlock Society to erect and pay for a house of worship. The Turlock Society then covenants, in consideration of said sum of money,

that it would use the money only for the purposes aforesaid, that it would continue to be an Evangelical Congregational church and to maintain public worship, that it would make an annual contribution to the Building Society, would preserve its corporate existence, would not alienate said house of worship or any portion of the premises described, would pay all taxes and liens thereon, and would keep the house insured.

It then declares that "for the better securing of said sum of money and the performance of its covenants and obligations herein contained and the repayment of the said amount" to the Building Society "as herein provided," the Turlock Society thereby granted to the Building Society a tract of land in Turlock fifty-eight by one hundred feet in extent and particularly described. Then follows a proviso to the effect that, so long as the Turlock Society should keep and perform the covenants and obligations in the instrument contained, "it may and shall remain in possession and enjoyment of said premises for the uses and purposes of the Evangelical Congregational church as fully and freely as if these presents had not been executed," and that "on payment of said sum" to the Building Society, and on performance of all the covenants of the instrument, the estate thereby granted should cease, determine, and be void.

Another clause contained the proviso that the Turlock Society "doth hereby covenant and agree to and with" the Building Society, that if the Turlock Society "or the church in connection with which it is organized" should cease to be an Evangelical Congregational church, or should for one year suspend public worship, or should cease to exist in its corporate capacity, or alienate its house of worship, "or fail to keep or perform any of the covenants or agreements hereinbefore provided, then in that case the whole amount secured by these presents shall be and become immediately due and payable and shall be paid by" the Turlock Society to the Building Society "without further notice or demand," and that in default of such payment, the Building Society should have the right to enter upon the granted premises "and to sell and dispose of the same" at public auction and convey the same in fee simple to the purchaser, and after retaining out of the proceeds the costs of sale and the amount secured, render the surplus to the Turlock Society.

This is not an ordinary mortgage to secure the payment of a debt. It was not the intention or purpose of the parties that a debt should exist from the church to the Building Society, except in the contingency that the primary objects of the transaction should fail. The money was not advanced or delivered to the Turlock Society as a loan. It was "provided" as "aid" toward the erection of a church, to the end that a local church society of the Congregational faith should be maintained in Turlock, and so long as such society was properly carried on there was to be no disturbance of its possession and no obligation on its part to repay in money. It was, no doubt, the anticipation and desire of both parties that the local church society should perpetually continue to exist and conduct the church affairs in the manner specified in the covenants. It is to be presumed that this was the purpose for which the local church was organized, and that it was a part of its duty independent of the obligations contained in the covenants. If it did so, the purpose of the plaintiff's donation would be accomplished and no debt would ever arise. The main purpose of the instrument was not to secure the repayment of the money, but to secure the application of that money to the purposes for which it was donated, to compel the continuous use of the property into which it was converted as a Congregational house of worship, and to prevent its being devoted to different uses.

The finding of the court is that the Turlock Society had not made an annual contribution to the Building Society for more than seven years before the action was begun, that it had not paid the taxes nor kept the building insured since the year 1894, and that the plaintiff knew of these failures more than six years before the action was begun. The complaint was filed on July 16, 1904. It is not found that any other breaches of the covenants had occurred. There is a finding that a meeting of the society had not been held since February, 1896. There is no covenant requiring that any meetings of the society shall be held. The covenant is for the holding of public worship, which is a different thing from a meeting of the society. The complaint alleges in general terms that all the conditions of the mortgage have been broken, and this allegation is admitted in the answer. This, however, does not establish the fact that they were broken more than

four years before the action was begun. Hence, the breaches mentioned in the findings, as above stated, are the only ones which occurred more than four years before the action was begun, and those only are to be considered in determining whether or not the action is barred. It is to be presumed that public worship was maintained and the general functions and work of the church performed until a time within the period of limitation. These latter constitute the principal matters intended to be secured and the principal inducement for the donation in question. The covenant to make an annual contribution could have been fulfilled by the contribution of any sum, however trifling. This, with the covenant to pay taxes and insurance, was of comparatively minor importance.

The contention of the appellants is that the agreement of the Turlock Society to repay the money to the Building Society became a matured obligation for money due, forthwith upon the occurrence of a breach of any of the covenants of the agreement, that a cause of action to foreclose the lien then at once accrued in favor of the Building Society, against which cause of action the statute of limitations began to run simultaneously with the breach of the covenant, and that this result would follow without the concurrence of any affirmative act of the Building Society, and even against its wish and will.

We do not think this rule is applicable to the instrument in question. It is not to be viewed as an ordinary commercial transaction. The cases, of which there are many, holding that where the time of payment of a debt is made to depend upon the happening of a given event, the debt becomes due immediately upon the occurrence of the event, are not fully applicable to transactions of this character. It is true that upon the happening of the event the plaintiff could at once proceed to sell the property under the power of sale contained in the instrument, or foreclose the lien, and that this could be done without notice or demand, other than the notice of sale, in one case, and the beginning of the action, in the other. But it does not follow that this would be the result of a breach independent of, or against, the will of the Building Society. We think the rule adopted after full consideration in the case of *Belloc* v. *Davis*, 38 Cal. 249, is applicable to the case at bar. That case involved an ordinary commercial transaction, a mortage and note for the payment

of a debt owing to the mortgagee. The note provided that on failure to pay the monthly interest when due, the principal and interest should "become due and payable, immediately, upon such default." Nothing was said about notice or demand and neither was required to make the interest due. By the terms of the note it became due at certain stated times. Discussing the question of the effect of the failure to pay the interest upon the running of the statute of limitations, the court said: "The provision in the note, to the effect that in the case of a default in the payment of interest, the whole amount of principal and interest shall 'become due and payable immediately upon such default,' is evidently in the nature of a penalty, inserted for the benefit of the creditor, and as an incentive to the debtor to stimulate him to the prompt payment of the interest in order to avoid a forfeiture of the credit allowed by the note. Being in the nature of a penalty, inserted for the sole advantage of the creditor, it was competent for him to waive the benefits which it secured to him, as the plaintiff in this case has done, by accepting payment of the interest after default made." And, in illustration of the necessity for this rule and the results of a contrary doctrine, the court further said: "Suppose the case of a promissory note payable ten years after date, with interest payable monthly, and with a clause that the principal is to become due on a failure to pay the interest, as in this case. The interest for the first month is not paid precisely on the day it became due, but is paid and accepted on the following day, and thereafter, for three years, is paid punctually at maturity every month; and whilst being so paid, and without any new default, the creditor brings his action to collect the principal sum, on the ground that the credit had been forfeited by a failure to pay the first month's interest for a single day, three years before. To hold that the action could be maintained, under these circumstances, would be repugnant to every principle of reason and justice, and shock the common sense of mankind. But if the argument for the defendants be sound, the creditor could not only maintain the action in the case supposed, but would be obliged to institute it within four years from the time of the default, on pain of losing his entire debt by the bar of the statute of limitations. We deem this to be altogether a too narrow and technical con-

struction of the statute, which, though designed to be a statute of repose, was never intended to work such hardship as this.'' The decision then proceeds to refer to the analogy of clauses in a lease declaring the lease forfeited upon failure to pay rent, in which case, as is well known, the landlord may waive or enforce the forfeiture at his option, and that if he so elects the lease will continue, notwithstanding the fact that by the strict terms of the covenants it would have ceased to exist by reason of the breach. Upon this point it said that the tenant would not ''be allowed to say that he is discharged from his covenants by his own default in the payment of rent. In other words he is estopped from alleging a forfeiture caused by his own default, on the familiar principle that a party shall not take advantage of his own wrong.'' This case has been approved in the subsequent decisions of this court. (*California S. and L. Society* v. *Culver,* 127 Cal. 107, [59 Pac. 292]; *Moore* v. *Russell,* 133 Cal. 300, [85 Am. St. Rep. 166, 65 Pac. 624]; *Mason* v. *Luce,* 116 Cal. 236, [48 Pac. 72].) In the two cases first cited it is held that the holder of the note containing such a clause may, even after he has exercised his option, elect to waive the forfeiture and thereby avoid the effect of his first election and restore the instrument to its *status* as an unmatured obligation.

The only point in which *Belloc* v. *Davis* differs from the case at bar is that in that case the obligation would become due in any event after a fixed period, whereas in this case it was not the intention that it should ever become due. This difference is not important to the application of the reasoning of that case to this case. Indeed, it may be said that it makes the reasoning more forcible in this case than in that. The rule is universal, with the exceptions provided in the statute itself, and certain cases where the statute is suspended when it becomes impossible under the law for a plaintiff to begin his action, that when the period of limitation has once begun to run, it cannot be postponed, suspended, or interrupted by any subsequent condition. (19 Am. & Eng. Ency. of Law, pp. 212, 215, 224; Wood on Limitations, sec. 6.) If the slighest breach of these covenants would set the statute irrevocably in motion, it would follow that if the tax became delinquent for a month, or a policy of insurance lapsed a few days before renewal, the plaintiff being aware thereof,

the money given as a donation would at once be changed to a matured debt, and the Building Society would be compelled to enforce payment within the succeeding four years, on pain of losing its money and of being deprived of all power to enforce the main objects in furtherance of which the money was provided, although, in the mean time, the delinquent tax had been paid, the building kept fully insured, and the primary object of maintaining public worship in the Congregational faith had been continually and satisfactorily accomplished. As in the case of a note payable at a future period, but providing for the forfeiture of credit upon failure to pay an intermediate installment of principal or interest, so here, the plaintiff has the right to waive the forfeiture provided by the instrument for its benefit, and to allow the Turlock Society to continue to perform such of the covenants as it was able to perform, without setting in motion the statute of limitations in its favor. The provision for the money to become *immediately* due, being for the benefit of the Building Society, it had the right to indulge the other party and prevent the forfeiture. The waiver mentioned in *Belloc* v. *Davis* was evidenced by the subsequent receipt of the defaulted interest. That, however, is not the only method by which a waiver can be made or evidenced. It could be accomplished by mere passive acquiescence, as in the present case. (29 Am. & Eng. Ency. of Law, p. 1105.)

The judgment is affirmed.

Angellotti, J., Sloss, J., Henshaw, J., and Lorigan, J., concurred.