[Civ. No. 2018.    Third Appellate District.—October 20, 1919.]

## BEN HAYASHI, Respondent, v. PACIFIC FRUIT EXCHANGE (a Corporation), Appellant.

[1] CHATTEL MORTGAGES—HARVESTING OF CROPS BY MORTGAGEE—PURPOSE OF PROVISIONS—CONSTRUCTION.—In this action to compel the satisfaction and discharge of record of a certain crop mortgage given to secure a money loan, the provisions in the mortgage that the mortgagee should have the right to market the crops and receive therefor the prevailing rates or commissions, and that the mortgagor should purchase from the mortgagee the supplies needed in preparing the crops for market, were incorporated therein for

the purpose of protecting the security for the payment of the money borrowed by the mortgagor from the mortgagee, and not to secure to the mortgagee the right to the possession of and to market the fruit when harvested or the right to furnish supplies to the mortgagee.

[2] Id.—Security for Future Advances.—A mortgage may be given to secure future advances, the amount of which may not be ascertainable until proceedings in foreclosure are ripe, or to secure indorsements made and to be made, or to secure payment for merchandise, not exceeding a specified amount, to be delivered at different intervals of time in the future.

[3] Id.—Security for Unliquidated Debts.—A mortgage may be given to secure the payment of a debt which, while not actually existing when the contract of hypothecation is made, is, from the nature of the contract and the whole subject matter thereof, inherently capable of coming into existence.

APPEAL from a judgment of the Superior Court of Sacramento County.  Charles O. Busick, Judge.  Affirmed.

The facts are stated in the opinion of the court.

Dunn & Brand for Appellant.

Charles A. Bliss for Respondent.

HART, J.—Plaintiff brought the action to compel defendant to satisfy and discharge of record a certain crop mortgage given by plaintiff to secure the payment of a loan of two hundred dollars made to him by the defendant and for one hundred dollars damages as provided in section 2941 of the Civil Code.  Judgment was in favor of plaintiff as prayed, from which judgment defendant prosecutes this appeal.

The principal question to be determined is as to what construction should be given the crop mortgage, plaintiff's claim being that it was given merely as security for the repayment of the two hundred dollars borrowed by him from defendant, while the contention of the defendant is that the mortgage was given to secure the performance of the marketing provisions of the mortgage, as well as the payment of the note.

3. Mortgage to secure future debts, notes, 116 Am. St. Rep. 690; 1 A. L. R. 1586.

Plaintiff was in the possession of 120 acres of land near Florin, in Sacramento County. On the sixteenth day of October, 1918, he borrowed from the defendant the sum of two hundred dollars and executed the crop mortgage in question. The instrument contained the following provisions, among others: That the mortgagor, for and in consideration of the sum of two hundred dollars to him in hand paid, "does sell and convey unto the said party of the second part [defendant] . . . the following growing crops, viz.: The crop of grapes of every description, now growing and to be grown during the seasons of 1919–20–21 upon the trees and vines now being, standing and growing and to be grown, and also all other agricultural and horticultural products," etc., upon the lands described; " . . . provided, nevertheless, and these presents are upon the express condition that if the said party of the first part . . . shall well and truly pay" said promissory note, "and also all other indebtedness that may hereafter be due, owing or existing from said" mortgagor " . . . and well and truly perform all other covenants herein provided to be performed by the party of the first part . . . then these presents shall be null and void. Also in consideration of the sum hereinbefore mentioned, the party of the first part hereby places his entire crops of grapes" for said seasons "in the hands of the party of the second part, to market for his account. The party of the second part to receive for its services in marketing said crops, its usual rates of commission established by it in the district. The party of the first part shall also pay to the party of the second part a loading charge of three cents per package. The party of the first part shall purchase from the party of the second part the necessary shook, paper, nails and other supplies needed in preparing the above mentioned crops for market." The mortgagor agreed to protect said crops while growing and to "prepare the same for market and deliver the same immediately into the possession of said party of the second part."

The court, on motion of the plaintiff, struck from the answer certain allegations, setting forth facts in support of defendant's theory of the scope of the mortgage herein involved. Notwithstanding the granting of this motion, the defendant at the trial offered to prove the allegations

stricken out, but, on objection of plaintiff, such proof was excluded.

The action was tried before the court sitting without a jury. The court found: "That defendant has never advanced, paid out or expended for or on plaintiff's account, any sum" other than the two hundred dollars evidenced by said promissory note; "that on the eleventh day of January, 1919, plaintiff repaid to defendant said sum of two hundred dollars, together with the interest due thereon to said date, and said defendant thereupon canceled said promissory note," and that plaintiff demanded satisfaction of said mortgage, which was refused; that the provisions of the mortgage that defendant should market the crops and receive commission, that plaintiff should purchase supplies from defendant, etc., were included in said mortgage "for the purpose of protecting and preserving the security . . . given to secure said promissory note, and for no other purpose," that since the making of the note and mortgage no crops of any kind have been harvested by plaintiff or marketed by defendant for plaintiff, and plaintiff has not bought any supplies from defendant.

Section 2941 of the Civil Code provides that when any mortgage has been satisfied, if the mortgagee does not cause the same to be satisfied of record, he shall be liable to the mortgagor for damages, "and shall also forfeit to him or them the sum of one hundred dollars."

The instrument, while upon its face a defeasible or conditional sale of the grape crop, is in legal effect a chattel or crop mortgage, and bears a close resemblance to a deed of trust, whereby the legal title to realty is conveyed to trustees to secure money loaned to the trustor by the *cestui que trust*, such title being defeasible by payment of the money loaned. The instrument provides, however, that the mortgagee shall be entitled to the immediate possession of the grapes when they are harvested and thus are in tangible and removable form, and this, it may be added, is also additional security for the payment of the note. But there is no question here raised as to the legal nature of the instrument. It designates itself as a mortgage, makes provision for certain matters in case of the foreclosure, and the parties treat it in their presentation of the points on this appeal as a mortgage.

[1] We agree with the conclusion arrived at by the trial court, in the construction of the writing, that the provisions in the mortgage that defendant should have the right to market the crops and receive therefor the prevailing rates or commissions for that service and that plaintiff should purchase the mentioned supplies from defendant, etc., were incorporated into the instrument for the purpose of protecting and preserving the security for the payment of the note. It is probable also that said provisions contemplated another purpose, to wit: To give to the defendant the profits accruing from its services in the marketing of the fruit and from furnishing to the plaintiff the supplies required in the proper preparation of the fruit, when harvested, for marketing.

It will be noted that the language or sentence introducing the provisions referred to into the instrument commences with the word "also," and that the provision requiring the plaintiff to place "his entire crop of grapes" for the three seasons named in the hands of the defendant "to market for his account" expressly states that it shall constitute a part of the consideration for the loan of the money evidenced by the note to secure which the mortgage was given. The salient part of the language or sentence is: "*Also,* in consideration of the sum hereinbefore mentioned, the party of the first part hereby places his entire crop of grapes for the seasons of 1919–20–21 . . . in the hands of the second party to market for his account." It will be observed that it is not by language expressly provided, nor is it reasonably susceptible to that construction when it is considered in connection with the other provisions of the instrument, that "the mortgage is intended to secure and does secure the right of the defendant to the possession of the fruit when harvested." It merely says and plainly means that by it the defendant, as part of the consideration for the loan of the money, and also as further security for its repayment, shall be entitled to the possession of the fruit for the years named and to market the same for and on account of the plaintiff. The same is true as to the provision whereby the plaintiff agreed to purchase the supplies necessary for preparing the grapes for shipment or marketing from the defendant—that is, the same is true

of that provision in so far as the matter of the consideration for the note was concerned.

The result of the foregoing views is that the mortgage was intended to secure the payment of the note and not to secure to the defendant the right to the possession of and to market the fruit when harvested or the right to furnish supplies to the plaintiff. These latter rights, as stated, were intended only as additional consideration for the note and as security, other than the mere mortgage itself, for the payment of the note. The plaintiff testified that, when negotiating for the loan and before he obtained it, he was told by defendant's agents that he would have to sign a marketing contract to market the crops for three years. The transaction was then reduced to writing, which writing embraced not only the mortgage to secure the payment of the note, but a shipping contract to which, as we conclude, the mortgage has no more relation than if the two agreements were in separate or different writings.

It may further be observed that the provisions of the mortgage could not be held to operate as a lien to secure the performance by the plaintiff of the agreement to place the grapes with defendant for marketing and to purchase supplies from the latter in any event unless, in case of default by plaintiff to perform these agreements, the defendant suffered some detriment or damage. In other words, it would hardly be in consonance with the principles of justice, or, indeed, with common sense, to hold that, although the defendant suffered no injury or loss from the default of the plaintiff in complying with the agreements referred to, it could, nevertheless, upon such default by plaintiff, proceed to foreclose the mortgage and cause the plaintiff's grape crops to be sold under the decree of foreclosure, for what purpose? If, however, the defendant should suffer loss or damage by the failure of the plaintiff to place the grapes with it to market or by his default in complying with his agreement to purchase supplies from the defendant, then it would have to be ascertained what that loss or damage was, and, if any be found, what damages, measured in money, would compensate the defendant for the loss so suffered by it. We have never heard of a mortgage being given to secure the payment of damages for the breach of a contract and we do not think that any such

a mortgage is to be found referred to in the books. Ordinarily, the security taken to insure the performance of such agreements as we are now considering is in the nature of a bond, and the remedy available to the party for whose benefit the bond is given, in case of a breach of the contract, is legal and not equitable, as is true in the case of the foreclosure of a lien.

[2] It is very true, as counsel for the defendant point out, a mortgage may be given to secure future advances, the amount of which may not be ascertainable until proceedings in foreclosure are ripe (*Tapia* v. *De Martini et al.*, 77 Cal. 383, [11 Am. St. Rep. 288, 19 Pac. 641]); or to secure indorsements made and to be made (*Brander* v. *Bowmar et al.*, 16 La. 370; *Kramer* v. *Trustees of F. & M. Bank*, 15 Ohio, 253); or to secure payment for merchandise, not exceeding a specified amount, to be delivered at different intervals of time in the future. (*Marvin, Assignee in Bankruptcy, etc.*, v. *Chambers*, 12 Blatchf. 495, [Fed. Cas. No. 9179].)

In *Stoughton* v. *Pasco*, 5 Conn. 442, [13 Am. Dec. 72], cited in 1 Jones on Mortgages, sixth edition, as authority for the statement therein "that a mortgage to secure the fidelity of an agent or factor is good," it is held, using the language of the syllabus: "Where one of two joint trustees of the property of a deceased person for the benefit of legatees executed a mortgage to the other to render a true account and pay over and deliver to the mortgagee all moneys, notes, and securities of the estate in the mortgagor's hands, such mortgage was held a valid encumbrance to the amount due, which was found to be $3,137 as against a subsequent mortgage with actual notice of an adjustment between the mortgagor and first mortgagee, and that there was more than two thousand eight hundred dollars due."

[3] But it is manifest that the case here does not come within the principles of the above cases. There never has been any doubt that a mortgage given to secure an unliquidated debt may be upheld. An "unliquidated debt," however, within the meaning of that expression as it is used in the sense that its payment is capable of being secured by a mortgage, is a debt which, while not actually existing when the contract of hypothecation is made, is, from the

nature of the contract and the whole subject matter thereof, inherently capable of coming into existence. It simply means a debt the exact amount of which cannot be known at the time that the mortgage is given. In the present case, as has been stated, whether there will be any debt at all, is problematical and remote, for it must depend, first, upon whether there is a breach of the agreement and, if so, upon the very uncertain result of the trial in court of a disputed question of fact or of law or both. The result would have to be reduced to a judgment to make it amount to a debt. In view of all these considerations, of which the parties may be assumed to have taken cognizance when entering into the contract, we think it is. clear that the mortgage was intended to cover the grape crops for the years named as security only for the note, and that the provisions relating to the marketing of the grapes and the furnishing the plaintiff with supplies were, as the trial court concluded, solely intended to preserve the security or operate as additional security for the payment of the note and also perhaps to give to defendant the benefit of such commissions as accrued from its services in marketing the grapes and of the profits resulting from the sale to plaintiff of the supplies.

In the transcript the defendant sets out certain specifications of error in the rulings of the court upon the evidence and also on the motion to strike out certain portions of the answer. The rulings, the correctness of which is so challenged, bear directly upon and involve the question of the construction of the language of the instrument which we have considered, and thus practically the assignments themselves have been herein considered and disposed of.

The judgment is affirmed.

Ellison, P. J., *pro tem.*, and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 18, 1919, and the following opinion then rendered thereon:

THE COURT.—In denying the application for a hearing in this court after decision by the district court of appeal

of the third appellate district, we desire to say that in so far as the opinion of the district court of appeal may be construed as holding that a mortgage may not be given to secure damages that may arise from a breach of contract, we express or intimate no opinion as to the correctness thereof. This matter is not essential to the decision.

The application for a hearing in this court is denied.

All the Justices concurred, except Melvin, J., who was absent.