[Civ. No. 6739. First Appellate District, Division One.—September 26, 1929.]

VIOLET M. MILLER, Appellant, v. MAURICE SALOMON et al., Respondents.

758

Gerald C. Halsey and Frederic T. Leo for Appellant.

A. S. Newburgh for Respondents.

PARKER, J., *pro tem.*—This is an action in claim and delivery, whereby plaintiff seeks to recover possession of certain personal property alleged to be wrongfully withheld from her by defendants. Plaintiff further claims damages for and on account of said withholding. Judgment was for defendants in the court below and plaintiff has appealed.

The defendant Sarah Salomon appears to be purely a nominal party, though she has appeared jointly with her co-defendant and the same answer was filed on behalf of both defendants. In so far as the activities of the defendants are involved, the sole actor throughout was the defendant Maurice Salomon and hereafter in referring to him he will be designated as defendant, without heed to the fact that there is a joinder.

Defendant was the owner of a certain apartment house in the city of San Francisco. On May 17, 1922, as such owner, he entered into a written lease agreement with one Alma Flynn, whereby he demised to her for the period of sixty months from May 20, 1922, the premises by him so owned.

As is usual, the lease contained many provisions, a very important one regarding the payments of rent. After setting forth the amount of rental, the lease further provided that the lessee should give to the lessor a chattel mortgage upon all of the furniture, carpets, curtains, bedding and all other personal property and chattels belonging to said lessee and placed by her in the premises. Such chattel mortgage was to be given the lessor as security for the faithful performance of all of the covenants of the lease and for the payment of the rent as provided in the lease.

On the eleventh day of July, 1922, Alma Flynn, lessee aforesaid, did execute and deliver to defendant a chattel mortgage in due and legal form covering certain furniture and furnishings, being the personal property involved in the present suit. It may be here noted that no question is raised concerning the title and ownership of the said property by the said Alma Flynn. The chattel mortgage by its terms, was given as security for the full, prompt and faithful performance of all the terms, provisions, covenants and conditions of the lease and especially as security for the prompt and full payment of the rent reserved. The said rent was $1,050 per month, payable monthly in advance. The chattel mortgage contained the following provision: "It is further agreed that the property herein mortgaged shall not be removed from the premises on which they are now located without the written consent of the mortgagee, and upon any attempted removal without such consent, the said mortgagee may immediately take possession of all said property and foreclose this mortgage."

On July 11, 1922, the same date as that of the chattel mortgage, the lessee, Alma Flynn, did transfer, set over and assign to one Madeline Leonard, all of the former's right, title, claim and interest in and to the lease. This assignment was accepted by Madeline Leonard, who assumed all responsibilities and obligations of Alma Flynn under the lease. The assignment received the consent of the defendant lessor.

The record is silent on the question of any transfer or sale of the furniture to Madeline Leonard, but it was the theory of the case in the court below and taken for granted by all parties that Alma Flynn did sell and transfer the furniture to Leonard at the time of the assignment

of the lease. It is a fact that Madeline Leonard took possession of the premises and of the furniture and assumed the obligations of the lease, which included the chattel mortgage to secure the rent payments. No point was made in the court below on the lack of any showing that there was any written transfer or bill of sale between Alma Flynn and Madeline Leonard. In any event, possession and claim of title to personal property would *prima facie* support a transfer thereof as against one claiming by virtue of some act or omission of the transferee.

On November 23, 1922, Madeline Leonard transferred and assigned to certain parties named Bennett (husband and wife) all of her right, claim, title and interest in and to the lease. This assignment was accepted by the Bennetts and consented to by the defendant, lessor.

On April 22, 1923, Madeline Leonard, under a contract of conditional sale, sold and transferred to the Bennetts all of the furniture and furnishings of the house, receiving therefor, under the terms of the agreement, a cash sum in partial payment and the balance to be paid in monthly payments at the rate of $150 per month.

On the seventeenth day of May, 1923, Madeline Leonard transferred and assigned to plaintiff herein, Violet M. Miller, the contract or agreement of sale held by the said Leonard, and the said plaintiff accepted the assignment subject to the outstanding agreement with the Bennetts. At the same time, and as a part of the same transaction, Madeline Leonard on the same date executed and delivered to plaintiff a bill of sale covering the furniture. The Bennetts remained in possession of the furniture, kept in and at the leased apartments, continuing the monthly payments to the plaintiff as assignee.

On July 15, 1923, the Bennetts assigned the lease to one Hewitt and the latter accepted the assignment, agreeing to faithfully and promptly keep and fulfill all obligations, conditions and covenants in the lease contained. Hewitt took possession of the premises and of the furniture therein and with the consent and acquiescence of the plaintiff continued along under the conditional contract of sale up to and including the payment due October 22, 1925. The payment due November 22, 1925, was not made. Here the record falters. It appears from the evidence that on Novem-

ber 22d, or thereabouts, the assignee, Hewitt, paid in full all rent then due.

The defendant owner on November 19, 1925, made, executed and delivered to one Frank Drew, a new lease on the premises covered by the original Flynn lease, the term of said lease being for sixty months, commencing November 19, 1925. In this new lease no mention is made of the old lease, which still had some two years to run. In no way or manner were the leases connected or tied in, by reference or otherwise. This Drew lease contained the old provision as to a chattel mortgage on the furniture running to the lessor to secure full performance of the lease obligations on the part of the lessee. Drew went into possession of the leased apartments, and the chattel mortgage that he gave covered the furniture here in dispute and also additional items that had from time to time, throughout the period of the various tenancies of the Flynn lease, been added thereto. In December Drew defaulted in his rent payment and did abscond and abandon the premises. Hence the issue here. Plaintiff claims the furniture as the owner thereof after default in payments under the conditional sale and defendant claims the furniture under both the old lease and mortgage and the new lease and mortgage.

From the facts as narrated it is clear that plaintiff has succeeded to all of the rights and she accepts all the liabilities of the original lessee, Flynn. It is likewise necessarily conceded that as between the parties here the right of plaintiff to recover follows, unless defendant has acquired some better title or right to the possession of the furniture under the lease agreements and his chattel mortgage. Concededly, defendant has no right to the possession of the property in question except as that right accrues by reason of the instruments hereinbefore mentioned.

At the outset defendant contends strenuously that the conveyance from Madeline Leonard to plaintiff was unlawful and void as being in contravention of section 538 of the Penal Code (Stats. 1925, p. 295). This section, as far as applicable here, provides: ''Every person, who, after mortgaging any of the property permitted to be mortgaged . . . sells or transfers the said property or any part thereof, . . . is guilty of larceny and is punishable accordingly; unless in case of a sale, transfer . . . such mortgagor informs the

person to whom such sale was made of the existence of the prior mortgage and also informs the prior mortgagee of the intended sale, in writing.''

There is not a word of evidence concerning any notice, given or not given, by Alma Flynn, the original mortgagor, to defendant, the original mortgagee. ▪ The statute, being a penal statute, when under consideration, as here, will receive a strict construction. ▪ The duty of giving notice, by the terms of the statute, is restricted to the original mortgagor and is a personal obligation. Under the presumptions that all persons are presumed innocent of crime and that the law has been obeyed, we must presume, in the absence of all evidence on the subject, that the original transfer from Alma Flynn was in full compliance with the statute. We then find Madeline Leonard the owner of the mortgaged property, but not the original mortgagor. Upon her the law has placed no duty in the respect noted. She was lawfully entitled to the possession of the property, controlled by the terms of the mortgage and with like limitations the absolute owner thereof. The test of her liability under the penal statute would be her criminal liability thereunder. In this connection we are satisfied that no crime could be charged against her under the express terms of the statute. ▪ It is our opinion that where mortgaged personal property is transferred to one not a party to the mortgage, with full notice of the mortgage and with the knowledge and assent of the mortgagee the said transferee may in all respects deal with the property without regard to section 538 of the Penal Code and the rights of the parties are governed by the provisions of the general law regarding notice, recordation, etc.

▪ Personal property, covered by chattel mortgage, is the subject of daily transfer and has become so much a part of the usual routine of sales commerce that the courts will not attempt to add burdens not already placed thereon by the legislature, in the absence of fraud or other sufficient reason.

The legislature, no doubt, reasoned that between the immediate mortgagor and his mortgagee there was a privity of contract and perhaps a personal contact; it recognized the transient character of personal property and the ease with which it might be concealed or transported beyond reach of

the creditor. It gave, therefore, to the creditor or mortgagee a preliminary protection by forbidding, under pain of severe punishment, certain acts on the part of the mortgagor. The section of the Penal Code could have gone farther and provided that any person owning property subject to a chattel mortgage or knowing of the existence of the mortgage who did the acts forbidden to the mortgagor, should be guilty of larceny and punished. However, this was not done. Or, in the body of the section (538, Pen. Code) the words "or person claiming the ownership of any property subject to chattel mortgage and in possession thereof" could have been added and subjected a transferee of mortgaged property to liability under the terms of the statute. This penal statute has not attempted to limit or define the contractual rights of parties to a chattel mortgage. It has, in the interests of public welfare, attempted to prevent certain species of fraudulent conduct. The letter of the law manifests the intent designed. After a mortgagee has once waived the protection accorded him by the terms of this section and permitted his boat to drift away from this haven of safety, he then must look to such other safeguards as the law affords.

Holding, as we do, that the contract between Madeline Leonard and the plaintiff was not an unlawful contract as being in violation of section 538 of the Penal Code, it becomes unnecessary to discuss the further point as to whether or not a contract made in violation of a penal statute is *ipso facto* void. It could be seriously questioned as to whether the transaction between Madeline Leonard and the plaintiff was such a sale or transfer as the penal laws forbid. At the time of the transaction, and long prior thereto, there was extant a conditional agreement of sale between Leonard and the Bennetts, who were not in default. The transfer to plaintiff was with full knowledge, on both sides, of this agreement. The bill of sale was merely one of a series of documents evidencing the transaction, which, in legal effect, was no more than an assignment of the rights of the vendor under the said conditional sale. The property remained on and in the premises and no effort was ever made by plaintiff to remove any portion therefrom.

Respondent contends that plaintiff was guilty of some kind of a fraud by her conduct in not giving notice

of her ownership to the world, either by recordation or personal notice to those who might be concerned. The circumstances called for no action on the part of plaintiff. She was not entitled to make any claim to the possession of the furniture on account of the conditional sale wherein the vendees were not in default. As long as the terms of the conditional sale agreement were being fulfilled, there was no obligation on the plaintiff to give notice, or to otherwise assert her interest. As indicated, hereinbefore, we conclude that plaintiff lawfully acquired the right of ownership, subject only to the terms of the conditional sale agreement, and she likewise acquired the right of full enjoyment and possession of the property involved subject only to the terms of the chattel mortgage executed by Alma Flynn to the defendant.

As noted, the chattel mortgage was not given to secure the payment of a pre-existing debt or obligation; it was given to secure performance of certain obligations assumed under and by virtue of a lease. It cannot be gainsaid that if all of the terms of the lease had been fulfilled at the expiration of the term, the chattel mortgage would have become *functus officio* and the chattels released from the lien thereof. Likewise, there can be no question but that the lessor could, at any time during the term, with the consent of the lessee, cancel the lease and assume possession of the demised premises, in which event the chattel mortgage would have fallen.

The record is barren of anything that will support even an inference that there was any privity between the last lessee, Drew, and the former lessee, Flynn, or any of her assignees or any other person holding under the Flynn lease. Nowhere in the record before us can it be even inferred as to the source of Drew's title to the furniture. Hewitt, the last assignee of the Flynn lease, paid the rent and discharged in full every obligation assumed by the lessee in the Flynn lease. At that very moment, if the lessor, Salomon, had accepted possession of the premises and agreed to a cancellation of the lease, he would have had not the slightest claim under the chattel mortgage. As a matter of fact, supported by abundant authority, that is exactly what he did when he accepted possession from the lessee and executed a new lease to another tenant.

There is no showing that the new lessee, Drew, was an assignee of the old lease, nor is there any evidence that Drew was an assignee of the rights of the vendee under the conditional sales contract. In fact, there is not a scintilla of evidence from which the identity of Drew might be disclosed or even inferred. The last holder under the Flynn lease, which supported the chattel mortgage under which defendant claims, had made complete and timely compliance with the terms of the lease and had, with the consent and acquiescence of the lessor, surrendered up the premises. Before this was done, and involved in the same transaction, the lessor had negotiated a new lease with one Drew and immediately upon Hewitt, the last assignee of the Flynn lease, going out, the new lessee, under a complete new lease, was in possession. The Flynn lease was then terminated and if, as found and here conceded, all obligations thereunder had been fulfilled, the mortgage lien upon the chattels was removed and the chattels freed therefrom.

The foregoing principles of law need little citation of authority. Sufficient support therefor will be found in 35 C. J. 1088, and the cases there cited. (See, also, *Triest* v. *Goldstone*, 173 Cal. 240 [159 Pac. 715].)

As to the point that the lien of a chattel mortgage falls with the discharge of the obligation, see 17 Cal. Jur. 711; 18 Cal. Jur. 157; *Todd* v. *Todd*, 164 Cal. 258 [128 Pac. 413].

▆ Respondent contends that the taking of the new lease was nothing more nor less than the continuance of the old lease. Had the parties to the new lease been the same, or had there been shown a privity of relationship between the parties to the old lease and those named in the new lease, there might be some merit in this contention, but under the record here the contention needs only to be noted and disregarded.

▆ From what has preceded, it must follow that any claim of defendant must rest upon his contract with Drew. Nothing in the record supports any claim on the part of Drew. It is not shown that he was an assignee either of the old lease or of the conditional contract of sale of the furniture. Defendant might as well have a bill of sale of the furniture from the ever-willing John Doe.

Judgment reversed.

Tyler, P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 26, 1929, and a petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 25, 1929.

All the Justices concurred.