[L. A. No. 17715.  In Bank.  Apr. 22, 1942.]

I. A. STUB et al., Respondents, v. FRANK BELMONT, Appellant.

Henry O. Wackerbarth for Appellant.

Monta W. Shirley and Taylor H. Snow for Respondents.

CARTER, J.—Defendant appeals from a judgment for $2,000 and a penalty of $100 entered against him pursuant to plaintiffs' motion for judgment on the pleadings. The penalty of $100 was awarded pursuant to section 2941 of the Civil Code providing therefor in cases where a mortgagee fails to give to the mortgagor a satisfaction of mortgage upon the payment thereof.

The following facts appear from the affirmative allegations in defendant's answer, which must be taken as true in entertaining a motion for judgment on the pleadings (*Cuneo* v. *Lawson*, 203 Cal. 190 [263 Pac. 530]), and the undenied allegations of plaintiffs' complaint. Plaintiff Underwood obtained title to an orange grove, having purchased it from a Mr.

Wilcox. The purchase price was $29,000 to be paid $5,000 in cash, $15,000 according to the terms of a promissory note secured by a second trust deed on the grove property, and the balance of $9,000 by the assumption of a trust deed then encumbering said property. In order to consummate the transaction, plaintiff Underwood executed the note and second trust deed for $15,000 to Wilcox and assumed the first trust deed. Not having the $5,000 cash she borrowed it from defendant for which she gave defendant on May 23, 1936, a promissory note, a crop mortgage securing the note, and a consignment contract having a three-year term. The latter contract did not contain a proper description of the land but was corrected on August 1, 1936. Thereafter, plaintiffs failed to care properly for the grove or crops thereon, and plaintiffs requested defendant to care for the same and advance the money necessary therefor, to which defendant agreed if new notes, mortgages and contracts would be executed. Accordingly, on October 3, 1936, the following instruments here directly involved were executed: A promissory note for $5,000 executed by plaintiffs to defendant payable on or before five years after date. The note was secured by a chattel mortgage, in which plaintiffs were mortgagors, on the crops growing and to be grown on the grove for the years 1936-1937 to 1940-1941, inclusive. The mortgage provided that it was given to secure: (1) the performance of "the terms and obligations of this mortgage," and the promissory note for $5,000. (2) The payment of any further loans or advancements not exceeding $5,000, "exclusive of any expenditures, advances, or expenses made or paid by said Mortgagee, or due or to become due to said Mortgagee from said Mortgagor by reason of any of the terms, provisions or conditions herein contained, or by reason of any contract secured hereby." (3) "The faithful performance by said Mortgagor, in the manner therein provided, of that certain contract in writing of even date herewith signed, executed, and delivered by said Mortgagor to said Mortgagee and which said contract, in the possession of said Mortgagee, is made a part hereof and referred to for further particulars and by which said Mortgagor in consideration of the said loan made by said Mortgagee to said Mortgagor and evidenced by said promissory note, has placed and agrees to deliver the said crops hereby mortgaged to and into the hands of the said Mortgagee to be packed and sold by said Mortgagee for the account of said Mortgagor, in

the manner in said contract provided." (4) "The faithful delivery of said crops when harvested to said Mortgagee for the purposes thereof and the payment to said Mortgagee of the commission to be paid by said Mortgagor under the terms of said contract, for the services to be rendered in the packing and selling of said crops thereunder." (5) "The payment of all other sums due or to become due to, and all advancements or payments made or which may be made by, said Mortgagee for and on account of said Mortgagor, under the terms or for the purposes of said contract, which said contract, each and all of the terms thereof, together with the commissions therein provided for said Mortgagor promises to keep, make and pay as therein provided."

The consignment contract executed on the same date as the note and mortgage, and referred to in the latter, is between plaintiffs as owner and defendant, as consignee and provides: "That the Owner, in consideration of one dollar and the promises herein on the part of Consignee, *employs* said Consignee to pick, haul, pack, ship and market All Valencia Oranges, now growing on his land and that during the term of this agreement may be grown upon his lands . . ."; that there is no lien against the crop except defendant's $5,000 chattel mortgage; that defendant accepts the employment and "agrees to pick, haul, pack, ship and market all or part of said crop or crops in such manner, at such time or place as will in his judgment yield the maximum returns therefor, subject to the following conditions"; that before payment of the net proceeds from the crops to plaintiffs, defendant may deduct 70 cents per box for packing oranges, 15 cents per box for selling, 5 cents for sweating, 15 cents for export shipments and also all expenses involved in transportation; that if plaintiffs dispose of any of the crops they shall "pay to the Consignee [defendant], as liquidated damages for such breach, the sum of fifteen cents (15 cts.) for each and every commercial package or box, known in the trade as 'field box,' or the equivalent thereof, which may be so disposed of, sold, marketed or consigned by said Owner, it being specifically agreed that it is impracticable and extremely difficult to fix the actual damage which would thereby be suffered by the Consignee." The term of the contract is until October 3, 1941, and gives to defendant broad authority and discretion with respect to marketing the crops.

Defendant took care of the grove and between May 23, 1936, and August 1, 1937, advanced therefor $8,000 more than he received from the sale of fruit. He alleges that he would have made a profit of $5,000 under the consignment contract during its term had he continued operations pursuant thereto. Plaintiffs desiring to sell the grove, requested defendant to cancel his mortgage and consignment contract upon payment of the amount he had expended on the grove and loaned to plaintiffs. Defendant agreed to cancel the mortgage upon payment of the loans and advancements, but insisted that the consignment contract and the mortgage insofar as it secured its performance remain in force. Finally, in August, 1937, it was agreed between the parties that plaintiffs would pay defendant $2,000 and defendant would cancel the contract. Pursuant to escrow instructions therefor, $10,598.28 was paid on behalf of plaintiffs to defendant, $8,598.28 representing the loan of $5,000 and advancements, and $2,000 for the cancellation of the contract. Defendant released plaintiffs from all liability under all the instruments.

Plaintiffs brought this action to recover the $2,000 paid by them and a penalty of $100, claiming that they were entitled to a satisfaction of the mortgage without the payment of the $2,000 because the performance of the consignment contract was not secured by the mortgage and did not create an independent obligation. We believe it is clear that defendant has stated a good defense to the action and the judgment on the pleadings must be reversed.

The trial court apparently based its decision upon the case of *Hayashi* v. *Pacific Fruit Exchange,* 43 Cal. App. 677 [186 Pac. 174]. In that case the action was by the mortgagor to compel satisfaction of a chattel mortgage on crops given to secure the payment of a $200 loan, the mortgage reciting that it was given as security for that payment ''and also all other indebtedness that may hereafter be due, owing or existing from said mortgagor'' and for the performance of the other covenants in the mortgage. It was also recited that in consideration of the loan the mortgagor gave the mortgagee the right to market the crops for which services he was to receive a commission, and the mortgagor was to purchase packing material from the mortgagee. The court held that the last-mentioned provisions were placed in the mortgage only for preserving the security for the payment of the $200, and that when it was paid, the mortgage did not stand as security for

the performance by the mortgagor of the marketing agreement embodied in the mortgage. That construction placed upon the instrument is extremely doubtful, but in any event it is not controlling in the case at bar because in the cited case it is stated:

"It will be observed that *it is not by language expressly provided,* nor is it reasonably susceptible to that construction when it is considered in connection with the other provisions of the instrument, that 'the mortgage is intended to secure and does secure the right of the defendant to the possession of the fruit when harvested.' " (Emphasis added.) In the case at bar as heretofore seen, the chattel mortgage expressly states it is to secure the performance of the consignment contract. ▆ In any event, however, the Hayashi case must be disapproved because it further holds that a mortgage may not be given to secure the performance of a contract such as the consignment contract here in question, and that a mortgage may not stand as security for damages for the breach of a contract. Approval of that portion of the decision was specifically withheld by this court on denial of a petition for a hearing. (*Hayashi* v. *Pacific Fruit Exchange, supra,* p. 684.) At least as between the mortgagor and mortgagee, a mortgage on either chattels or real property, given as security for the performance of a contract, is valid and proper, and may stand as security for such performance. The statutory law recognizes that rule. Section 2920 of the Civil Code defining a mortgage provides:

"Mortgage is a contract by which specific property is hypothecated for the performance of an act, without the necessity of a change of possession." (See, also, Civ. Code, §§ 2875, 2891, 2905, 2909, 2911, 2912, 2924, 2928; *Congregational Church Bldg. Soc.* v. *Osborn,* 153 Cal. 197 [94 Pac. 881]; *Falkner, Bell & Co.* v. *Hunt,* 16 Cal. 167; *Purser* v. *Eagle Lake L. & I. Co.,* 111 Cal. 139 [43 Pac. 523]; 41 C. J. 454-459; 36 Am. Jur. 720; *Kansas City Life Ins. Co.* v. *Banaka,* 150 Kan. 334 [92 P. (2d) 63]; *Seid Pak Sing* v. *Barker,* 197 Cal. 321 [240 Pac. 765]; *Dover Lumber Co.* v. *Case,* 31 Idaho 276 [170 Pac. 108]; *McNeff* v. *Southern Pacific Co.,* 61 Ore. 22 [120 Pac. 6].)

▆ Turning to the transactions in the instant case, we think there is no doubt that defendant has stated a sufficient defense to plaintiffs' action. The three instruments, the note, mortgage, and consignment contract were executed on the

same day, October 3, 1936, and should be construed together as a part of the same transaction. The mortgage specifically and expressly provides that it was given not only as security for the payment of the $5,000 loan and advances, but also for the performance of the terms of the consignment contract. This is clear from the hereinabove quoted excerpts from the mortgage. As before noted, the court in the Hayashi case stated that there was no express term of the mortgage there involved making it security for the marketing agreement with reference to the crops. The loan of $5,000 and advancements were made in consideration of the execution of the consignment contract, but independent thereof there was adequate consideration supporting the contract expressed upon its face, that is, a promise for a promise. Plaintiffs agreed to employ defendant at certain rates to market the crop for five years and defendant promised to accept the employment and market the crops. We do not believe the consignment contract was merely an additional method of preserving the security (the crops) and therefore terminated when the loan of $5,000 and advances were paid, or that it was not secured by the mortgage. There were definite advantages gained by defendant in entering into the contract such as the fixed payments for the various types of services rendered. This is clearly indicated by the clause for liquidated damages payable to defendant, which is hereinabove quoted. That it was contemplated that defendant would benefit under and during the term of the contract in addition to receiving merely the money he loaned and advancements is indicated by the following clause that the property is not to be sold even after the term of the contract unless all advances have been paid:

"It is understood and agreed that any claim of the said Consignee for advances or other money paid on account of the said Owner under the terms of this agreement shall be fully satisfied before the consummation of any sale of all or part of the above described property. *This applies only after expiration of this contract.*" (Emphasis added.) While the mortgage does contain provisions such as the making of the consignment contract a part of the mortgage; that it is to secure the repayment of every other item mentioned therein and all other liabilities incurred for the protection of the indebtedness; that the mortgagor shall pay all advances made under the contract with interest; and that the mortgagee may take possession of the crops when harvested and pay his

commissions, it is clear that the mortgage was specifically made security for the *performance* of the contract; the performance of that contract was therefore an independent affair. The contract thus created an arrangement under which certain benefits accrued to defendant along with definite obligations assumed by him for a fixed period of time, namely, five years. It follows that insofar as appears from the pleadings, the consignment contract was binding upon plaintiffs for five years and a discharge of the $5,000 loan and advances did not entitle plaintiffs to a satisfaction of the mortgage because it would still stand as security for the performance of the contract during the term thereof. Defendant was thus not required to cancel the consignment contract or satisfy the mortgage until the covenants in the contract had been performed. There is nothing contrary to these views in *Western Loan & Bldg. Co.* v. *Scheib,* 218 Cal. 386 [23 P. (2d) 745], where a third party lien claimant was involved, and no obligation was owed by the mortgagor to the mortgagee, or in *Miller* v. *Salomon,* 100 Cal. App. 756 [281 Pac. 89], where the lease, the performance of which was secured by the mortgage, was terminated.

It is also urged by defendant as a ground for the reversal of the judgment that his pleading sufficiently establishes a compromise and settlement of the controversy between the parties as a sufficient defense to plaintiffs' action. With this contention we also agree. It was pleaded by defendant in that respect that he would have made a profit of over $5,000 under the consignment contract during its term. He then alleges:

". . . that during the month of July, 1937, the plaintiffs herein had an opportunity to sell the orange grove . . . upon condition that they could convey the title thereto free and clear of encumbrances, . . . except the trust deed securing the $9,000.00 trust deed note . . . and . . . plaintiffs . . . requested . . . defendant to forward to the Security Title Insurance and Guarantee Company, as escrow holder, a release of the crop mortgage . . . and a cancellation of the consignment contract . . . said documents to be recorded when said escrow holder could pay to . . . defendant the sums of money which . . . defendant had expended in the care and maintenance of said orange grove and the balance due on the advancement by . . . defendant to . . . plaintiffs in connection with the purchase of said orange grove by the

plaintiff . . . ; that . . . defendant notified said escrow holder that he had expended large sums of money in caring for said orange grove and protecting same during the freeze of January, 1937, and that there was no reason why he should cancel said consignment contract, that if the plaintiffs herein desired to pay off the crop mortgage . . . defendant would receive said sums of money and release the crop mortgage so far as it affected said loans or advancements, reserving his rights thereunder, however, to secure the performance of the terms of the consignment contract.

". . . defendant refused to cancel said consignment contract in view of the fact that plaintiffs did not have any money invested in said orange grove and had not cared for same during the time that the plaintiff . . . held legal title thereto, and because . . . defendant had advanced the money which was used as the down payment on said orange grove and advanced all sums of money in connection with the care and maintenance of said orange grove and had advanced large sums of money and had done considerable work in connection with the protecting of said orange grove and the crop growing thereon from the freeze during the month of January, 1937; that . . . defendant felt he was entitled to the profit on said consignment contract . . . and to any profit which he might make in carrying out the terms of said consignment contract, and for this reason . . . defendant refused to cancel said consignment contract when requested to by the plaintiffs herein.

". . . a conference was held by the plaintiff I. A. Stub, W. H. Wadsworth, his attorney, . . . defendant . . . and Henry O. Wackerbarth, his attorney, and in the course of said conference said plaintiff I. A. Stub agreed to pay this answering defendant the sum of $2,000.00 if he would cancel said consignment contract . . . and thereafter . . . defendant deposited with . . . such escrow holder, all documents necessary to clear the title to the real property . . . so far as the same was encumbered by any of the documents executed by the plaintiffs . . . in favor of . . . defendant, and instructed said escrow holder to use them in accordance with the instructions of the plaintiffs herein upon payment to . . . defendant of the sum of $10,598.28 within the time provided in said escrow instructions, upon condition that the plaintiffs herein waive any and all future claims against . . . defendant in connection with said escrow, the documents deposited

therein or the transactions between the plaintiffs and . . . defendant; and the plaintiffs herein, in connection with said escrow, signed a waiver of all future claims against . . . defendant in connection with the transaction out of which said consignment contracts, notes and mortgages . . . arose, . . . there was due . . . to . . . defendant from the plaintiffs . . . the sum of $8,598.28, and the difference between said sum of $8,598.28 and $10,598.28, to wit, $2,000.00, was paid to this answering defendant as the consideration for the cancellation of the consignment contract . . . and a waiver of all profits which . . . defendant would have made under said consignment contract, which said profits, as hereinbefore alleged, would have exceeded $5,000.00 under the terms of said contract." It cannot be doubted that the necessary elements for a compromise were present. There was a dispute between the parties, namely, whether defendant had the right to have the consignment contract continue for the balance of its term and be secured by the mortgage during that time. It is clear from the foregoing allegations that the dispute was in good faith and nothing to the contrary appears. There was nothing illegal about defendant's claim. There was an offer and acceptance of the compromise.

The only question that might arise is with respect to the consideration for the settlement. From what we have heretofore stated, it is obvious that the giving up of the consignment contract was a surrender of a legal right by defendant. But even if it were not, the consideration necessary to support a compromise need not always consist of the surrender of a claim that is necessarily legally valid and enforceable. The rule is thus stated in *Bennett* v. *Bennett,* 219 Cal. 153, 159 [25 P. (2d) 426]:

"The agreement herein involved was a compromise agreement entered into between Bennett and his wife to settle a disputed claim and as such is binding upon the parties. 'An agreement entered into upon a *supposition of a right,* or of a *doubtful right, though it afterwards comes out that the right was on the other side,* is binding, and the right shall not prevail against the agreement of the parties, for the right must always be on the one side or the other, and therefore the compromise of a doubtful right is a sufficient foundation of an agreement.' " (Emphasis added.) (See, also, *Hamilton* v. *Oakland School Dist.,* 219 Cal. 322 [26 P. (2d) 296].) Plaintiffs assert that there was no bona fide dispute between

them and defendant, especially, as the relations between them were of a fiduciary character. It is apparent from the defendant's pleadings that the dispute was honest and bona fide. Defendant was claiming no more than that to which he believed he was entitled. There was nothing in the record to establish that the dispute was not in good faith, or was the result of fraud or undue influence, or was wholly groundless and known by defendant to be so.

█ Defendants' defense may be treated as an accord and satisfaction inasmuch as the $2,000 was paid and the release given. Treated as such, it follows that as far as the pleadings show there was a bona fide dispute as to the claim for the $2,000. Whether in fact the claim was legally enforceable is immaterial. (*Everhardy* v. *Union Finance Co.*, 115 Cal. App. 460 [1 P. (2d) 1024]; *B. & W. Engineering Co.* v. *Beam*, 23 Cal. App. 164 [137 Pac. 624].) It remains for the court to determine the issue upon the evidence at a trial of the action from all the circumstances of the transaction.

Defendant contends that judgment should be directed for him because of certain statements made by plaintiffs' counsel in the course of his argument on the motion for judgment on the pleadings. We do not believe those statements were sufficient as a basis for a directed judgment. Justice will be best served by a trial of the action.

The judgment is reversed.

Gibson, C. J., Shenk, J., Curtis, J., Edmonds, J., and Traynor, J., concurred.