[L. A. No. 13366. In Bank.—October 3, 1933.]

SARAH ELLEN BENNETT, Plaintiff and Respondent, v. WALTON L. BENNETT, Defendant and Respondent; ARTHUR J. BROWN et al., Appellants.

154

Frank G. Tyrrell for Appellants.

Goodwin J. Knight for Respondents.

CURTIS, J.—This is an action for separate maintenance instituted on June 20, 1924, by Sarah E. Bennett against her husband, Walton L. Bennett. Robert A. Brown and Arthur J. Brown, his son, were joined as defendants in this action. The complaint, in addition to the allegations which, if true, entitled the plaintiff to a judgment for separate maintenance, contained allegations to the effect that in March, 1921, her husband, Walton L. Bennett, and the Browns, had fraudulently conspired and agreed, each with the others, to deprive plaintiff of her interest and to defeat her rights in and to certain property of the defendant Bennett, located on Ninth Avenue in Los Angeles, and that in furtherance of said conspiracy, her husband, Walton L. Bennett, on March 24, 1921, had executed, acknowledged and delivered to the defendant, Robert A. Brown, acting as attorney-in-fact for Arthur J. Brown, his son, a deed to certain property, consisting of a house and lot; together with a bill of sale to all of the furniture and personal property located therein, which property was the separate property of said Walton L. Bennett, thereby conveying legal title to said property to Arthur J. Brown. The complaint further alleges that in September, 1921, plaintiff was forcibly evicted from said residence by the defendants, the Browns, and that Robert A. Brown thereupon entered into possession of said property and thereafter claimed to be entitled to the possession thereof. An answer was filed to said action by Walton L. Bennett, and likewise a cross-complaint for divorce on the ground of extreme cruelty.

This action is the second chapter in the story of the marital difficulties of the Bennetts which has been before this court. Previous to the institution of this action by Sarah E. Bennett, and in January, 1924, Walton L. Bennett had instituted an action in which action the same Browns were named as defendants. By that action he sought a judgment declaring that said Browns held the legal title to said real and personal property in trust for him, and prayed for an order requiring them to reconvey to him said real property and household goods and furniture. In that action the Browns claimed as a defense that they had made a *bona fide* transfer of certain Texas acreage to Bennett in exchange for Bennett's Los Angeles property. In said action Sarah E. Bennett was joined as a party defendant in order that she might be bound by any judgment with respect to the property. Upon the trial of that action, judgment was entered in favor of the defendants Browns. From that judgment Bennett appealed. The decision is reported in *Bennett* v. *Brown,* 206 Cal. 424 [274 Pac. 532, 533]. The evidence in the record demonstrated conclusively that Bennett had in fact deeded said property to Arthur J. Brown in order to forestall his wife from asserting any rights in said property and preparatory to his seeking a divorce from her in Reno, Nevada. This court in that case reversed the judgment in favor of the Browns, saying: "The judgment in this cause is reversed, with directions to the court below to deny all relief on all issues between the plaintiff and the defendants, but without prejudice to the rights of the cross-defendant Sarah E. Bennett, who alone is entitled to have her costs of appeal herein as against the respondents. This decision is made and this direction to the court below given because the record shows without substantial conflict that both plaintiff Walton L. Bennett and respondent Robert A. Brown have entered a court of equity with unclean hands."

Briefly stated, the circumstances of the transfer by Bennett of his property to the Browns, as narrated by the court in said decision, are as follows: At the time of the transfer, Walton L. Bennett had been living in discordant relationship with his wife, Sarah E. Bennett, and a state of armed neutrality existed between these parties. She was occupying the residence which was the separate property of her

husband, and refused to be ejected therefrom. Bennett sought to dispose of said property so as not to lose the right thereto and to a reconveyance thereof after he should have rid himself by divorce of the burden of his wife. He fell in with Robert A. Brown, a real estate broker, who had offices in connection with Bennett's attorney. Brown, "with the sole intention of defeating the claims of said wife [Sarah E. Bennett] for alimony and maintenance, concocted the scheme of having Bennett deed said residence to Arthur J. Brown, son of Robert A. Brown". The scheme was carried out on March 24, 1921, and thereafter Arthur J. Brown deeded to Bennett a tract of 160 acres of Texas land, uncertain in value, which had never been seen by any of the parties and to which the title was in doubt. At the same time Bennett gave to Arthur J. Brown a bill of sale of all the household effects in said residence. Bennett then went to Reno, Nevada, where he filed a suit for divorce against his wife, testifying in said suit that he owned no property, and that no one held any property in trust for him. In the meantime, Robert A. Brown, in the name of his son, Arthur J. Brown, had brought a suit against Sarah E. Bennett for possession of the property and for the household effects. There is no question that the expense of this litigation was paid by the attorney of Bennett and on his behalf in order to get Mrs. Bennett out of the house. Finally, Mrs. Bennett quitclaimed to Arthur J. Brown and moved out of the property. Upon these facts as disclosed by the record, this court reversed the judgment, based upon findings which exonerated the Browns and confirmed the title in them, denying relief *in toto* to either Bennett or his wife. The court said: "To the extent that the findings exonerated Brown senior from being *particeps criminis* in the scheme to defraud the wife and to the extent that they hold that Brown did not with full knowledge receive the property to aid in that scheme, said findings are without substantial support in the evidence. . . . It is sufficient for our purposes to know that these parties were acting in concert with respect to the transaction to defraud Sarah E. Bennett." In this decision this court was most careful to preserve the rights of Sarah E. Bennett and to hold that as to her rights the conveyance by her husband to Arthur J. Brown was absolutely ineffectual and invalid. It specifically held: "As to Sarah E. Bennett,

who has appealed, attacking the transaction as fraudulent, the situation is different. She is entitled to have her claims adjudicated in the light of the palpable fraud against her.'' It is apparent, since the reversal of the judgment did not of itself affect the possession of the property in dispute, leaving it in the hands of the Browns just as the judgment of the trial court had left it, that the purpose of this decision was to protect the rights of Sarah E. Bennett from being cut off by an adverse judgment against her and to permit her to establish her rights by proper proceedings.

The decision was handed down on February 4, 1929. On May 27, 1930, the action for separate maintenance, theretofore instituted by Sarah E. Bennett, came on for trial. At that time there was presented to the court a memorandum of agreement between Sarah E. Bennett and Walton L. Bennett which had been entered into between these parties for the purpose of settling their property rights. This agreement provided that the superior court might award to Sarah E. Bennett the sum of $7,000 for her permanent support and maintenance, irrespective of whether or not a decree of divorce should be granted to Walton L. Bennett, said sum to be inclusive of all temporary alimony theretofore accrued and inclusive of the sum theretofore awarded to Sarah E. Bennett for attorney's fees and costs. It further provided that such agreement was made upon condition that judgment for said sum should specify that Sarah E. Bennett should have a lien upon the before described real property (being the property theretofore conveyed by Bennett to Arthur J. Brown, the subject of the former suit) and that she should have recourse only to the said real property for the payment of said judgment. In consideration therefor, Sarah E. Bennett agreed to waive and relinquish any and all claims which she might have or might thereafter have against said Walton L. Bennett by reason of the marital relations of the parties, and each of the parties waived and relinquished all rights of inheritance each from the other. An interlocutory decree of divorce was granted to Walton L. Bennett upon his cross-complaint and in said judgment it was decreed in accordance with said agreement that plaintiff Sarah E. Bennett have judgment against the defendant Walton L. Bennett for the sum of $7,000 and that such judgment should be a specific lien upon the prop-

erty therein described. The court further decreed that neither of the Browns had any right, title or interest in said property, and specifically approved the property settlement agreement entered into between Sarah E. Bennett and Walton L. Bennett and ordered that execution might issue upon said property in order that the judgment for said $7,000 should be paid. In the final decree of divorce, dated October 23, 1931, the provisions of the interlocutory decree with respect to the approval of the property settlement, the judgment for $7,000 in favor of Sarah E. Bennett, and all provisions relating to the property rights of the parties were made binding upon the respective parties. Walton L. Bennett, being satisfied with the judgment, takes no appeal. This appeal, therefore, is by Robert A. Brown and Arthur J. Brown from that portion of the judgment which affects their interest in the real property formerly conveyed to Arthur J. Brown by Bennett, and to which he holds title by reason of the fact that Bennett having come into equity with unclean hands, equity would not lend its aid to force a reconveyance from Arthur J. Brown to him.

■ This appeal is predicated upon the ground that by reason of the fact that the divorce was granted to the husband, Walton J. Bennett, necessarily the plaintiff, Sarah E. Bennett, was not entitled to a judgment awarding her separate maintenance and, therefore, that judgment awarding her $7,000 must be reversed and the lien upon the real property discharged. This contention is wholly untenable. The property settlement between Bennett and his wife was entered into at a time when she had on file a complaint entitling her, if the allegations thereof were true, to separate maintenance, and Bennett had on file a complaint, which, if the allegations thereof were true, entitled him to a divorce. At that time the respective rights and obligations of the parties were not determined. It is true that if the case had proceeded to judgment in the absence of any property settlement, the court would not have been justified in granting alimony to the wife, who was the guilty party. (*Everett* v. *Everett,* 52 Cal. 383; *Ex parte Spencer,* 83 Cal. 460 [23 Pac. 395, 17 Am. St. Rep. 266]; *Lampson* v. *Lampson,* 171 Cal. 332 [153 Pac. 238]; *In re McKenna,* 116 Cal. App. 232 [2 Pac. (2d) 429]; *Johnson* v. *Johnson,* 104 Cal. App. 283 [285 Pac. 902, 904]; *Johnson* v. *Superior Court,* 128 Cal.

App. 584 [17 Pac. (2d) 1055, 1057].) We are not here dealing with such a situation. We are dealing with a situation where a husband made a conveyance to a third person for the specific purpose of defrauding his wife of any rights which she might have in his separate property. (*Bennett* v. *Brown, supra.*) ▄ During the pendency of her action for separate maintenance and while her rights were still finally undetermined, the wife entered into a compromise agreement with her husband. This she clearly had a right to do. (*Parker* v. *Parker,* 55 Cal. App. 458 [203 Pac. 420]; *Johnson* v. *Johnson, supra.*) In the Johnson case the court reversed an order modifying an interlocutory decree of divorce, which had been granted to the husband, upon the ground that a valid property settlement had been entered into by the parties and it did not appear from the record whether or not a provision for the making of monthly payments to the wife by the husband had been incorporated in said agreement. The court there said: "In this case the decree of divorce was given to the innocent husband and he was directed to pay $100 per month to his erring wife. There is no authority of law for such an order (secs. 136, 139, Civ. Code), and if supported at all must find its strength in a contract between the husband and the wife settling their property rights. There is nothing in the policy of our law prohibiting such a contract. In fact, it is authorized by our statutes (sec. 158, Civ. Code), and if the contract is fair and just it may be approved by the court." ▄ The agreement herein involved was a compromise agreement entered into between Bennett and his wife to settle a disputed claim and as such is binding upon the parties. "An agreement entered into upon a supposition of a right, or of a doubtful right, though it afterwards comes out that the right was on the other side, is binding, and the right shall not prevail against the agreement of the parties, for the right must always be on the one side or the other, and therefore the compromise of a doubtful right is a sufficient foundation of an agreement." (6 Cal. Jur., p. 176.) Thereafter the court in the action which finally settled the rights of the parties was empowered to give effect to this agreement. ▄ Appellants urge that Mrs. Bennett was not at liberty to enter into an agreement with her husband because by such agreement

he could circumvent the appellants and by indirection prevent them from retaining the property which the court by its prior decision had left in their hands. Unless we hold that Mrs. Bennett was entitled to contract with her husband as if no conveyance had been formerly made by him in fraud of her rights, we will be giving effect to that fraud against her. We are here only concerned with the rights of Mrs. Bennett, and they cannot be destroyed or jeopardized by the fact that incidentally Bennett may gain the satisfaction of knowing that his partners in the fraud will not be able to retain the fruits thereof. There is nothing to indicate that Bennett will benefit in the slightest degree financially by the agreement. He has secured a final decree of divorce from Sarah E. Bennett, and the fact that she will gain the property heretofore lost by him by his fraud does not inure to his advantage.

Despite the fact that the prior decision expressly held that, "Her quitclaim deed under these circumstances may not be said by this court at least to foreclose her from relief upon her independent suit against the parties to this transaction or in the issues tendered by her in the present action," the appellants insist that by the giving of the quitclaim deed to Arthur J. Brown, Sarah E. Bennett has forever waived her right to attack said deed from Bennett to Arthur J. Brown, and is forever foreclosed from asserting any interest in said property. The record clearly shows that the securing of the quitclaim deed from Sarah E. Bennett was one of the steps in the scheme to defraud her of her rights. It was procured at a time when she was being ousted from possession of the property by the suit in unlawful detainer ostensibly prosecuted by the Browns, but in fact instigated and financed by her husband. Unless she was at the time in possession of the true facts of the case, and knowingly made the quitclaim deed with the intent of deliberately waiving her rights and relinquishing her claims, the giving of the quitclaim deed cannot operate as an estoppel. Moreover, it appears from the record that the entire consideration for the quitclaim deed was in fact furnished by her husband and that no part thereof was in fact furnished by the Browns. It is true that Robert A. Brown testified that although the money was actually paid by the attorney for Bennett out of Bennett's money, never-

theless, this payment was to be considered as a loan from Bennett to him. Bennett denied that he ever made a loan to Brown, or had ever intended to, and it is admitted by Brown that no part of the purported loan from Bennett to him, applied to the payment to Mrs. Bennett for the quit-claim deed, was ever repaid by him to Bennett. Under these circumstances we are of the opinion that the quit-claim deed from Mrs. Bennett to Arthur J. Brown furnishes no bar to the enforcement by the plaintiff of her rights in the property.

Although it is immaterial to the decision herein, it should perhaps be noted that the title to the Texas land which had been deeded to Bennett by Arthur J. Brown, now stands of record in the name of Arthur J. Brown, by reason of the fact that prior to the institution of the previous suit by Bennett, Bennett made a reconveyance of said property to Arthur J. Brown and sent the deed to Texas for recordation. As a matter of fact, therefore, the Browns have not suffered any loss.

The judgment is affirmed.

Preston, J., Langdon, J., Shenk, J., Thompson, J., Seawell, J., and Waste, C. J., concurred.