[L. A. No. 17346. In Bank. Mar. 5, 1942.]

G. C. DeGARMO, Respondent, v. A. GOLDMAN et al., Appellants.

Frank M. Gunter for Appellant Shenberg.

O. C. Sattinger for Appellant Golden State Glass Corporation.

Newby & Newby and Mitchell, Silberberg, Roth & Knupp for Appellant Goldman.

Glen Behymer and Biby & Biby for Respondent.

EDMONDS, J.—The controversy between the parties to this litigation concerns the affairs of the Golden State Glass Corporation. G. C. DeGarmo, one of its stockholders, and also a director, under the authority of section 310 of the Civil Code, brought a suit against N. E. Shenberg and A. Goldman for the purpose of removing them as directors. As grounds for such removal, DeGarmo alleged that they had grossly abused their authority and had committed certain fraudulent and dishonest acts. In a second count of the complaint, it was alleged that the conduct of these directors had damaged the corporation in the sum of $10,000, and that the suit was prosecuted by the stockholder, on behalf of the corporation, because a demand upon its board of directors to sue would be useless.

The corporation was also named as a defendant, as required by the statute.

Upon the allegations of the complaint and evidence presented by affidavit, a receiver of the corporation was appointed, but the orders made in that regard were set aside. (*Golden State Glass Corporation* v. *Superior Court,* 13 Cal. (2d) 384 [90 Pac. (2d) 75].) The case is again before this court upon the separate appeals from the judgment prosecuted by each of the defendants, and a motion by the corporation, to substitute attorneys.

The corporation not only answered the allegations of the complaint but later filed a cross-complaint, pursuant to an order made upon motion, alleging that DeGarmo was indebted to it in the sum of $22,000 paid to him for services which were not rendered. Later, the order allowing the filing of this cross-complaint was vacated. Goldman also filed a cross-complaint for declaratory relief concerning the rights and duties of the directors generally and under certain agreements made by them in regard to control of the corporation. He asked the court to determine whether the corporation has three or four directors, and to dissolve the corporation in the event that it has four directors who are so deadlocked that the corporation cannot carry on its business.

Upon trial of these issues, judgment was rendered against Goldman upon his cross-complaint; also, that he and Shenberg each be removed from his respective office as a director of the corporation, and barred from re-election during the period prior to December 1, 1940.

The first question requiring consideration concerns the nature of the action, for unless it is one in equity, this court has no jurisdiction of the appeal. (Const., art. VI, sec. 4.) The respondent urges that his action is one at law and that he has invoked a statutory remedy; the appellants take the position that section 310 of the Civil Code, as amended, only enlarged the equitable jurisdiction of the superior court.

Since the distinctions between actions at law and proceedings in equity have been abolished, considerable difficulty has often been encountered in defining them, and with the enlargement of statutory remedies, it is unfortunate that the Constitution places jurisdiction upon such a theoretical basis. The doctrine that when classification is necessary, a court should look to the historical basis of the plaintiff's right under the English law in the light of such modifications as have taken place in this country (*Philpott* v. *Superior Court*, 1 Cal. (2d) 512 [36 Pac. (2d) 635, 95 A. L. R. 990]), is not always an accurate one. The equitable characteristics of the relief sought must be considered, for the courts of chancery have always claimed and exercised the right to provide a remedy for every wrong not cognizable by courts of law, and the complexities of the present social order have brought about conditions which were unknown when the English courts of equity were established. For example, statutory remedies to quiet title are said to be within the court's equi-

table jurisdiction. (*Thomson* v. *Thomson,* 7 Cal. (2d) 671 [62 Pac. (2d) 358, 117 A. L. R. 1]; *Benson* v. *Shotwell,* 87 Cal. 49 [25 Pac. 249, 681].)

An example of a statutory equitable remedy is section 315 of the Civil Code. Under this section, upon the filing of an action therefor by a shareholder of a corporation, the superior court shall have the power to try and determine the validity of the election or appointment of any director. Forty years ago, it was held that this statute enlarged the historical jurisdiction of chancery and provided an equitable remedy. (*Whitehead* v. *Sweet,* 126 Cal. 67 [58 Pac. 376]; see, also, *Simpson* v. *Nielson,* 77 Cal. App. 297 [246 Pac. 342].)

Section 310 of the Civil Code, as originally enacted, fixed the conditions under which individual directors, or the entire board of directors, of a corporation may be removed from office by the stockholders. In 1931, this section was amended by the addition of subdivision 3, which provides that ''The superior court of the county where the principal office is located may at the suit of any shareholder or shareholders holding at least ten per cent of the number of outstanding shares with or without voting rights remove from office any director or directors in case of fraudulent or dishonest acts or gross abuse of authority or discretion with reference to the corporation, and may bar from re-election any director so removed for a period prescribed by the court. The corporation shall be made a party to such actions.''

Although, strictly speaking, directors of a corporation are not trustees, it has been held that section 2230 of the Civil Code relating to trustees is also applicable to them. (*Bainbridge* v. *Stoner,* 16 Cal. (2d) 423 [106 Pac. (2d) 423]; *Snediker* v. *Ayers,* 146 Cal. 407 [80 Pac. 511].) The statute invoked by the respondent not only provides for the removal of a director found to have been guilty of acts which would be cause for the removal of a trustee under the broad doctrines of equity, but also authorizes the court to ''bar from re-election any director so removed for a period prescribed by the court.'' A determination to this effect is in the nature of an injunction. It is also closely analogous to the equitable remedy for the removal of a trustee provided by section 2283 of the Civil Code, and the relief which may be obtained is characteristic of a court of equity in that it acts on the person of the defendant. (See Pomeroy's Equity Jurisprudence (4th ed.), vol. 1, page 163; Story's Equity Jurisprudence (14th

ed.), vol. 1, page 91.) Moreover, the statutory action against directors for misconduct is based upon a breach of their fiduciary duty to the corporation and it is said that under such circumstances equity has concurrent jurisdiction with law. (3 Fletcher Cyc. Corp. (perm. ed.), sec. 1270, page 749; see, also, Morawetz, Private Corporations, sec. 543, page 517.)

The respondent relies upon *Neall* v. *Hill*, 16 Cal. 145 [76 Am. Dec. 508], where this court denied that equity had jurisdiction with regard to the removal of corporate officers of any description. But the court also said that "in all cases where this power has been exercised by a Court of Chancery, the jurisdiction has been expressly conferred by statute." (Page 149.) Section 310 of the Civil Code, enacted many years after that decision, has supplied the statutory authority, although it may be noted that two later cases considered the right of a court to remove directors as being within the historical jurisdiction of equity. In the first of these, *Wickersham* v. *Crittenden*, 93 Cal. 17 [28 Pac. 788], a stockholder brought suit for the purpose of protecting his interest in a corporation against certain acts of its directors which, it was alleged, were unauthorized. This court held that the relation of directors to the corporation which they serve is a fiduciary one, and "If a trustee is shown to have been unfaithful the court . . . may remove him from his trust." (Page 32.) At a later time the District Court of Appeal observed that "a court of equity may remove directors of a corporation if deemed necessary when they have proven unfaithful." (*California etc. Assn.* v. *Superior Court*, 8 Cal. App. 711, 712 [97 Pac. 769].) Although each of these statements is dictum, they express the broad concept of equitable jurisdiction which is both historically justified and presently required in judicial administration if courts consider the protection of rights as of first importance.

 A consequence of this holding is that the respondent is not entitled to the relief sought by him unless he came into the court of equity with clean hands. And this rule is applicable even if the evidence supports the findings of fact, which are favorable to him and in almost literal accordance with the allegations of the complaint.

The court found that Goldman, with the knowledge of Shenberg, in violation of an agreement made between the corporation and a glass workers' union relating to rates of pay, collected rebates from certain employees; that a certain employee

was discharged for refusal to consent to such practice and a new workman employed who agreed to and did make such rebates. It also found that prior to July, 1935, Shenberg and Goldman instructed the corporation's bookkeeper to keep two sets of books, and make incomplete returns to a glass contractors' association, under which the corporation did not pay certain amounts due from it upon the basis of the true amount of business done.

Another finding of the court is that Goldman, as secretary of the corporation, with the knowledge of Shenberg, made false reports to the lessor of the premises upon which the business was carried on for the purpose of deceiving the lessor, and that upon the basis of such reports the lessor accepted a less amount of rent than should have been paid. Also, that in a number of reports made by Shenberg under contracts for work performed by the corporation in connection with projects of the Public Works Administration of the United States, he certified, on its behalf, that certain employees were not truthfully classified in accordance with the work performed by them and that the amount of their wages was misstated.

The court further found that Shenberg and Goldman proposed to some employees that they would be paid at the prevailing rate for work done on government jobs and at the union scale for other work, but that they could not work for the corporation unless they rebated to Goldman, for the benefit of Goldman and Shenberg, the amount paid over a specified sum each week. Some employees accepted this proposal and made payments accordingly, and Shenberg, knowing the facts, certified to the government agency that wages had been paid at the prevailing rate, concealing the refunds.

The acts enumerated in these findings certainly are contrary to those principles of honesty and fair dealing which should be followed by an officer or director of a corporation. But in determining whether the respondent should have the relief which he seeks, the court of equity will also consider the facts concerning his conduct.

By their answers, Shenberg and the corporation denied that DeGarmo had been either ready, able or willing to perform the duties of his office. They pleaded that in 1936, he and the other officers entered into a contract concerning the management of the corporation, which included the amount of salary to be paid to each of them for his services. The sal-

ary of DeGarmo was fixed at $500 per month, and from 1935 through 1938 the corporation paid to him approximately $23,000, although he failed and refused to render any services therefor.

In this connection, they asserted, for almost three years prior to the commencement of the present suit, Shenberg and Goldman requested DeGarmo to perform his duties, but he refused to do so, in consequence of which such duties were performed by them. His salary, it is alleged, was discontinued solely because of his refusal to perform the duties prescribed for him as the president of the corporation.

In his cross-complaint Goldman alleged that DeGarmo had entered into certain contracts in writing by which he agreed that the number of directors of the corporation should be reduced from four to three and to cancel certain stock. According to Goldman, DeGarmo has refused to comply with this contract and contends that he is not bound by it although the other parties to it have fulfilled all of its terms.

Answering DeGarmo's charges concerning the use of false records of sale to deceive the glass association in regard to the amount of money due to it, Shenberg and the corporation pleaded that, according to the advice given them by DeGarmo, the agreement was void from its inception and in restraint of trade and no payment should be made under it. Concerning the assertedly false sales tax returns, both alleged that under an agreement concerning the division of duties between the officers of the corporation, the supervision of all of the financial records of the corporation, including the duty to make tax returns, was vested in DeGarmo and at no time did he alter the method of filing sales tax returns or the manner of maintaining the books of the corporation.

These answers present two issues as to the good faith of DeGarmo. One of them concerns his asserted failure to comply with the contract under which he agreed to perform certain services for the stipulated salary. The other relates to the charges made by him in which he asserted that his co-directors had been guilty of fraudulent practices.

Upon the first one, the trial court found in favor of De Garmo, but the finding in this regard is not supported by the evidence. When called as a witness, in his own behalf, De Garmo testified that he did not agree to perform any duties: "It was never intended that I should spend any particular time there except such time as I saw fit." He admitted that

in a deposition he had replied to a question asking what he did for his salary: "It didn't make any difference whether I did anything or not . . . it was not the intention that I should do anything in particular."

But of even more importance is the fact that the trial court excluded evidence tending to prove that, for a long period of time, DeGarmo had not performed his duties as the president and director of the corporation. Upon cross-examination, he was asked: "Well, Mr. DeGarmo, since July 5, 1935, to the present time you have drawn from the corporation approximately $22,000 in salary, haven't you?" When the court sustained an objection to this question, counsel offered to prove that in the years 1936 and 1937 the respondent rendered no services of any appreciable nature for the corporation. This offer was rejected by a similar ruling of the court. In conclusion, counsel for the appellants asked DeGarmo whether since July, 1935, he had been ill a great part of the time and practically incapacitated from taking care of any business. This question was also held to be improper.

The exclusion of this evidence was error of a most serious nature. If the court had permitted DeGarmo to answer the questions propounded to him and other questions of the same nature relating to his own conduct and had found that he was guilty of willful and deliberate breach of contract, this would have been tantamount to a finding of bad faith within the meaning of the doctrine of clean hands.

Upon the second issue of good faith, the court made no finding although it is the duty of a court of equity, upon any suggestion that a plaintiff has not acted in good faith concerning the matters upon which he bases his suit, to inquire into the facts in that regard. For it is not only fraud or illegality which will prevent a suitor from obtaining equitable relief. Any unconscientious conduct upon his part which is connected with the controversy will repel him from the forum whose very foundation is good conscience. (*Johnston* v. *Murphy,* 36 Cal. App. 469 [172 Pac. 616].) Nor will equity aid him who is guilty of breach of contract connected with the transaction concerning which he asks for a decree in his favor. (*Harrison* v. *Woodward,* 11 Cal. App. 15 [103 Pac. 933].)

The rule in this regard is a fundamental one. (*Bennett* v. *Brown,* 206 Cal. 424 [274 Pac. 532]; *Young* v. *Young Holdings Corp., Ltd.,* 27 Cal. App. (2d) 129 [80 Pac. (2d) 723]; *Baar* v. *Smith,* 97 Cal. App. 398 [275 Pac. 861]). It was suc-

cinctly explained in *Allstead* v. *Laumeister,* 16 Cal. App. 59, 64 [116 Pac. 296], where the court, quoting from Pomeroy's Equity Jurisprudence, said that " 'whenever a party, who, as *actor,* seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience, or good faith, or other equitable principle, in his prior conduct, then the doors of the court will be shut against him *in limine;* the court will refuse to interfere on his behalf, to acknowledge his right, or to award him any remedy.' " (See, also, *Richman* v. *Bank of Perris,* 102 Cal. App. 71 [282 Pac. 801].)

■■ The action of equity courts in their interposition on behalf of suitors for any and every purpose and in their administration of any and every species of relief, is guided and regulated by this principle. It differs from the maxim, "he who seeks equity must do equity" in that the latter assumes that different equitable rights have arisen from the same subject matter or transaction, some in favor of plaintiff and some in favor of the defendant so that the plaintiff is required to recognize and provide for defendant's rights and his relief is granted only upon a showing that defendant's rights are protected. Therefore, as the very foundation of an equity forum is good conscience, any really unconscientious conduct connected with the controvery to which he is a party is sufficient justification for the court to close its doors to him, nor does the fact that a plaintiff may have no adequate remedy at law justify disregarding the maxim. (*Miller* v. *Kraus,* [Cal. App.] 155 Pac. 834.) The burden is on the one coming into a court of equity for relief to prove not only his legal rights but his clean hands, and he may not rely on any deficiencies that may be laid at the door of the defendants. (*Richman* v. *Bank of Perris, supra.*)

■ According to the respondent's own testimony, approximately two years before he filed his suit, he was told that two sets of books were being kept for the purpose of defrauding the Glass Jobbers Association. About the same time, he discovered that false sales tax returns were being made to the state. Not long after, he was given information that the corporation was defrauding its lessor by means of false reports concerning the volume of business transacted upon the leased premises.

What did he do upon receiving this information? He testified that he talked with Shenberg, and once or twice with Goldman. He mentioned some of the matters to the book-

keeper but he did not ask her to show him the books. And although the corporation then employed an auditor who made monthly reports of its business, DeGarmo did not ask him to make any investigation of these matters.

The respondent says that he told Goldman and the book-keeper that the irregularities must not continue. But he never made any investigations to determine whether or not his demands had been carried out, even though Shenberg told him that Goldman was continuing to make false reports for sales tax purpose. He did not communicate with the corporation's lessor or the state or the sales bureau in an attempt to rectify the fraud practiced upon them. And he permitted Goldman to negotiate a new lease with the lessor when he knew that it had been falsely informed concerning the income of the company.

During all of this time, DeGarmo was not only a director of the corporation; he was also its president. As holder of one-half the stock he personally benefited by every fraudulent act of Shenberg or Goldman that increased the assets of the company. And as the corporation's president, he was being paid a salary to supervise its office, handle its accounts, and take care of its tax matters. Under these circumstances, the failure of the trial court to find upon the material issue of DeGarmo's good faith requires a reversal of the judgment. (*Tucker* v. *United Railroads,* 171 Cal. 702 [154 Pac. 835] ; *Matthiessen* v. *Grand,* 92 Cal. App. 504 [268 Pac. 675].)

Concerning the appeal of the corporation, the action of the trial court in striking its cross-complaint from the files and refusing to hear evidence thereon may not be reviewed on this appeal because the court has rendered no judgment determining the rights of the parties in that regard. But the corporation is a necessary party to the action authorized by section 310 of the Civil Code and, as such party, it may appeal from the judgment rendered although its rights are not specifically determined by that judgment. The allegations of its answer are substantially the same as those made by Shenberg and present the same issue as to the good faith of the respondent.

The motion to substitute attorneys for the corporation was made by Newby and Newby, who claim to represent it under a resolution authorizing their employment which was adopted on March 15, 1940, approximately one year after the judgment was entered. It is opposed by counsel who represented the corporation upon the trial of the action and is its at-

torney of record in this court, and also by counsel for Shenberg. Each assert that the judgment was not self-executing; that it was stayed when the appeals of Goldman and Shenberg were perfected; that DeGarmo and Crane, whom the complaint alleges were directors with Goldman and Shenberg when the suit was instituted, not constituting a majority of the board of directors, could not elect successors to Goldman and Shenberg; and that any purported action for that purpose is invalid.

The effect of an appeal from a judgment is a matter of statutory regulation. Section 949 of the Code of Civil Procedure provides that in cases such as the present one "the perfecting of an appeal stays proceedings in the court below upon the judgment or order appealed from. . . . But such appeal does not stay proceedings, without a writ of supersedeas, where it adjudges the defendant guilty of usurping, or intruding into, or unlawfully holding public office, civil or military, within the state. . . ." It has been held that the exception in this statute does not apply to the judgment in an action to determine the validity of an election of a director of a corporation. (*Foster* v. *Superior Court,* 115 Cal. 279 [47 Pac. 58].) Also, in an earlier action to set aside the election of a director, this court decided that the effect of an appeal was "to leave the parties in the same situation with reference to the rights involved in the action, as they were in prior to the rendition of the judgment." (*Dulin* v. *Pacific Wood & Coal Co.,* 98 Cal. 304, 308 [33 Pac. 123].)

Considering the exception of the statute, the court at an early date reached the conclusion that an appeal from a judgment ordering a sheriff removed from office operated as a supersedeas because he was not charged with usurping or intruding into or unlawfully holding a public office. (*Covarrubias* v. *Superv'rs. of Sta. Barb. Co.,* 52 Cal. 622.) And when the members of the board of supervisors were ordered removed from office the court declared that "the appeal, when well taken, '*ipso facto* operated a *supersedeas.*'" Restating this determination more fully it said: "Whether, then, the judgment in such a case be considered a self executing judgment or not, the appeal is equally self executing and restores the officer to his rights of office until its final determination." (*Morton* v. *Broderick,* 118 Cal. 474, 485 [50 Pac. 644].)

The code provision is perfectly plain and this court has consistently applied its express terms as providing a statu-

tory supersedeas in cases such as the present one. Accordingly the appeal of Goldman and Shenberg stayed the judgment appealed from and the resolution of March 15, 1940, directing a substitution of attorneys is ineffective for that purpose.

However, upon a rehearing of the motion, DeGarmo presented for filing a supplemental affidavit in which he states that further action has been taken by the corporation concerning a substitution of attorneys. The judgment removing Goldman and Shenberg from office barred them from re-election only until December 1, 1940. According to DeGarmo's affidavit, a meeting of the stockholders of Golden State Glass Corporation was held on December 5, 1940, at which time a new board of directors was elected. Thereafter a meeting of the directors then elected was held, at which time the resolution expressing the desire of the corporation to substitute Newby & Newby as its counsel was ratified and approved.

In an answering affidavit, on behalf of the corporation, facts are stated which are at variance with those presented by DeGarmo concerning the election of directors. These affidavits therefore present an issue of fact concerning the validity of the election, and a decision upon the motion would require a determination as to what persons, if any, had been duly elected as directors of the corporation. Under such circumstances, the record is not such as to enable this court to rule upon the motion.

There is also before the court a stipulation signed by Newby & Newby, who, on March 18, 1940, were substituted as counsel for the appellant Goldman, and counsel for De Garmo, that the appeal of Goldman may be dismissed. When this stipulation was filed, the court reserved a ruling upon it in order that the effect of a dismissal upon the rights of other appellants might be considered in connection with the merits of the case.

[11] The rules of this court provide: "An appeal may be dismissed by the court at any time, upon and in accordance with the written stipulation of the attorneys of record of the respective parties." (Rule XXIV.) This rule states a general principle of appellate procedure. An appellant may not dismiss his appeal as a matter of right; whether he will be permitted to do so is within the discretion of the court. And where the dismissal of the appeal of one of several appellants will prejudice his co-appellants, it may be properly refused. (3 Am. Jur. 322, 324; 4 C. J. S. 1942.) Nor should a court allow

a litigant to dismiss his appeal when it appears that the effect of such an order would make it possible for the respondent to obtain the benefits of a judgment to which, in equity and good conscience, he is not entitled.

The reason for the stipulation requesting a dismissal is undoubtedly shown by affidavits now before the court. From them it appears that since September 1, 1939, Goldman has been employed by the Golden State Glass Company as manager of its business department with the title "Assistant to the President." But upon a retrial, the court may determine that, because of his own derelictions of duty as the president and a director of the corporation, DeGarmo should not obtain equitable relief. If that should occur and, in the meantime, Goldman has been allowed to dismiss his appeal, DeGarmo will have accomplished at least a portion of an inequitable purpose.

Under these circumstances, the court will not dismiss the appeal of Goldman and the rights of the respective parties must be determined accordingly. Nor will it dismiss the appeals of Goldman and Shenberg upon the ground that the issues have become moot because the judgment barred each of them from re-election only during the period prior to December 1, 1940. The record shows that at the time this suit was commenced Shenberg was employed by the corporation under a contract and that the determination of his appeal may affect the rights thereunder. Also, it is apparent that the validity of actions taken by the directors appointed to succeed Goldman and Shenberg may be called into question as between them and DeGarmo or the corporation. The case must therefore be decided upon the merits. (*Couts* v. *County of San Diego,* 139 Cal. App. 706 [34 Pac. (2d) 812].)

The court will make no order dismissing the appeal of Goldman pursuant to the stipulation of counsel; permission to file the supplemental affidavit upon the motion of the corporation to substitute counsel and the answer thereto is denied as to each of them; the motion to substitute counsel is denied without prejudice to an application to renew the same in the Superior Court upon a new trial of the suit; and the judgment is reversed.

Gibson, C. J., Traynor, J., and Peters, J., pro tem., concurred.

SHENK, J., Dissenting.—I agree that this court has original appellate jurisdiction in this case but I dissent from the judgment of reversal as to the defendant Shenberg and the corporation and from the refusal to dismiss the appeal of the defendant Goldman.

The defendant Shenberg's brief is devoted to disputed evidentiary matter and other discussion not material to the real issue in the case. Section 310 of the Civil Code provides for removal of directors from office in case of fraudulent or dishonest acts or gross abuse of authority or discretion with reference to the corporation. The complaint charged him and the defendant Goldman with certain fraudulent acts. The trial court found, among other things, that Shenberg, along with Goldman, was guilty of fraudulent practices in connection with dealings between the corporation and a certain labor union with which it had contractual relations; fraudulent practices in obtaining rebates from employees; fraudulent practices in dealing with its employees in connection with work being performed on Public Works Administration contracts; and fraudulent practices in keeping duplicate books in such a way that false reports were made to a trade association so that increased sales were made in violation of an agreement with that association. It was also found that as a result of the keeping of two sets of books, the rental for the premises occupied by the corporation which was based on the amount of sales, was fraudulently reduced to the minimum. In considering Shenberg's appeal from the judgment of removal, the issue is simply whether the evidence supports the findings as to the alleged fraudulent acts. A review of the record discloses that there is overwhelming evidence to support those findings, and the majority opinion does not even intimate otherwise.

As one of the acts of abuse of authority the complaint charged that on and after March 1, 1938, Goldman and Shenberg refused to permit DeGarmo to perform any of his duties as president of the corporation or to perform any services for or on behalf of the corporation and that they gave such instructions to the auditor as to cause the corporation to discontinue DeGarmo's salary. As a defense or justification for the discontinuance of the salary, the defendants offered evidence to show that since 1935 DeGarmo had been ill a great part of the time and had been so incapacitated that he could render no services to the corporation. The trial court sus-

tained objections to this offer of proof yet found that De Garmo had performed his duties until March 1, 1938. Defendant Shenberg now urges that this finding is not supported by the evidence and that it was prejudicial error to sustain the objections to the offer of proof that DeGarmo had not performed the services. If the stopping of the salary payments by the corporation because of the activities of this defendant were the only act of misconduct charged against him and if the judgment of removal were based solely on this alleged act of misconduct there might be some merit in the contention. However, as previously stated, numerous acts of misconduct were found which were supported by the evidence. It therefore becomes immaterial whether this one finding is supported by the evidence. (*Hertel* v. *Emireck,* 178 Cal. 534 [174 Pac. 30] ; *Young* v. *Young Holdings Corp., Ltd.,* 27 Cal. App. (2d) 129, 154 [80 Pac. (2d) 723] ; 2 Cal. Jur. 1028, 1029 ; 24 Cal. Jur. 942.) Assuming that the trial court erred in sustaining the objection and that the finding with reference to DeGarmo's services is unsupported, such finding does not affect the judgment of removal and is not a ground for reversal. (*Forestier* v. *Johnson,* 164 Cal. 24 [127 Pac. 156] ; *Delannoy* v. *Quetu,* 73 Cal. App. 627 [239 Pac. 71].)

In answer to a question propounded by this court since the appeal was lodged here the defendant Shenberg now contends that the plaintiff DeGarmo was estopped from bringing the action for removal because of alleged acquiescence and participation in the alleged fraudulent acts. In other words, it is claimed that DeGarmo came into court with unclean hands. Assuming that the plea is available to Shenberg and that, as here, it may be raised without pleading and for the first time on appeal, this defendant is at once met with the conclusion of the trial court implicit in the findings and judgment that no basis in fact existed for the operation of such an estoppel. Whether it existed was a question of fact and the plaintiff is entitled to the intendments in his favor arising from the judgment. Unless the record shows as a matter of law that he actively participated in the fraudulent and dishonest acts or had knowledge of those acts and negligently failed to take any steps to remedy the situation this court is bound by the conclusions of the trial court.

DeGarmo denied any knowledge whatsoever of the fraudulent activities of Shenberg and Goldman until after the same were committed. He admitted acquiring information

that false sales reports had been made to the Biddle Sales Corporation so that the defendant corporation could make more sales in violation of its agreement to the lessor bank to reduce rent; and to the state to reduce sales taxes. But he did not remain inactive after learning of these activities. He made strenuous and frequent objections to such a method of conducting the affairs of the corporation. He reprimanded Shenberg, Goldman, the bookkeeper, and the auditor, and demanded that the methods of reporting sales be changed. These efforts to correct the dishonest practices within the corporation were effective. In August, 1936, DeGarmo caused the corporation to withdraw from the glass association, thus terminating the false sales reports to that association. At the end of 1937 a new lease was made which provided that the rent was to be paid on a flat basis instead of being based on the amount of sales. There is little testimony in regard to the payment of sales taxes, but it clearly appears from the record that that difficulty had also been corrected before the commencement of the action.

There is no evidence whatsoever that DeGarmo actively participated in the fraudulent practices of Shenberg and Goldman. There is evidence that when DeGarmo obtained knowledge of such practices he protested against the continuance of the same. He received assurances that they would be discontinued and they were discontinued with the results above indicated. There is no basis in the record for the contention that the plaintiff was or is estopped from maintaining the action.

### Appeal of A. Goldman

The defendant Goldman, through his own attorney, filed a separate notice of appeal from the judgment removing him as a director of the corporation. He has filed no brief. He was charged with the same acts of misconduct and gross abuse of authority alleged against Shenberg and since he has filed no brief he may well be deemed to have abandoned his appeal. Furthermore, Goldman has presented to this court a written stipulation to dismiss his appeal with the request that an order of dismissal be made in accordance therewith. The stipulation is signed by his counsel of record and is approved by his own signature. It is also signed by counsel for the plaintiff.

Rule XXIV governing the practice and procedure in this court provides: ''An appeal may be dismissed by the court

at any time, upon and in accordance with the written stipulation of the attorneys of record of the respective parties."

Notwithstanding the foregoing rule the defendant Shenberg objects to an order of dismissal of Goldman's appeal on the ground that he would be prejudiced thereby. There is no merit in the objection. It may be assumed that under some circumstances an appellant should not be permitted, as of right, to dismiss his appeal when such dismissal would prejudice the rights of a co-defendant on a joint appeal. But Goldman's appeal is not of that character. It is a separate appeal which he had the right to take or not to take regardless of Shenberg's wishes. Having taken it he should have the right to control it under the circumstances here presented and to dismiss it under the rule.

The corporation is not a party aggrieved by this judgment. The judgment does not purport to adjudicate any of the corporation's rights. It is silent on that subject. It would not constitute a bar to any subsequent action the corporation might desire to bring against the plaintiff. Section 938 of the Code of Civil Procedure provides that "Any party aggrieved may appeal. . . ." Unless a party is aggrieved he has no right of appeal (*Maxwell Hardware Co.* v. *Foster,* 207 Cal. 167 [277 Pac. 327]), and if taken it should be dismissed. (*Youle* v. *Thomas,* 146 Cal. 537 [80 Pac. 714]; 2 Cal. Jur. 217.) A party agrieved is one "having an interest recognized by law in the subject matter of the judgment, which interest is injuriously affected by the judgment." (*Estate of Colton,* 164 Cal. 1 [127 Pac. 643].)

In my opinion the judgment removing the defendant Shenberg as a director of the corporation should be affirmed and the separate appeals of the defendants Goldman and the corporation should be dismissed.

Curtis, J., and Carter, J., concurred.

Respondent's petition for a rehearing was denied April 2, 1942. Shenk, J., Curtis, J., and Carter, J., voted for a rehearing.