[No. F009782. Fifth Dist. Nov. 23, 1988.]

D. PAUL FANSLER et al., Plaintiffs and Respondents, v.
DAVID P. FANSLER, Defendant;
UNITED STATES OF AMERICA, Third Party Claimant and
Appellant.

COUNSEL

Jeffrey W. Eisinger, Assistant United States Attorney, for Third Party Claimant and Appellant.

Forrest & McLaughlin, Theodore R. Forrest, Jr., and Jeffrey L. Wall for Plaintiffs and Respondents.

## OPINION

STONE (W. A.), J.—Because appellant, United States of America, on behalf of the Small Business Administration, very narrowly limits the issue it requests us to consider, we need not recite the facts of the lawsuit in detail. Appellant frames the issue as follows: "The respondents sought to enforce an equitable lien. The lower court committed reversible error by failing to investigate whether they were entitled to equitable relief when facts suggesting otherwise were brought to its attention."

### STATEMENT OF FACTS AND PROCEEDINGS

In November 1985 respondents[1] and defendant, David P. Fansler (David), settled an ongoing dispute, the terms of which provided, inter alia, that

---

[1] Respondents are D. Paul Fansler, Duncan & Bernard Properties and Fansler Management Corporation. When we refer to all of these parties, we shall use the term "respondents." When we refer to D. Paul Fansler only, we shall designate him as "Paul" to avoid confusion between him and defendant, David P. Fansler.

Paul guaranteed two separate loans in favor of the Fresno Bank of Commerce in the amount of $125,000 each. The guaranty on one of the loans was to be secured by a deed of trust on David's 3 percent interest in the Cedar Commons apartment complex, a partnership in which David was a limited partner.

By July 1987 David had defaulted on his obligation to the bank, and Paul was required to pay $12,908.66 pursuant to his guaranty. Respondents filed suit against David, seeking (1) $12,908.66 for monies paid out, (2) $243,748 which was the remaining balance on the two notes, and (3) an equitable lien in the amount of $243,748 on David's interest in the Cedar Commons partnership.

David failed to respond to the complaint, and by default respondents obtained judgment on October 21, 1987, as follows: "1. Principal in the amount of $256,656.66;

"2. Interest from June 1, 1987, to the date of entry of this Judgment calculated at the rate of 10.5 percent per annum on the principal sum of $243,748.00 in the amount of $9,956.93;

"3. Interest from June 16, 1987 on the principal sum of $12,908.66 at the rate of ten percent (10%) per annum in the amount of $445.61;

"4. Costs in the amount of $121.00;

"5. Attorney's fees in the amount of $3,987.50;

"6. Plaintiffs have an equitable lien in the three (3%) percent interest of defendant in CEDAR COMMONS, a California Limited Partnership, in the amount of $243,748.00;

"7. That the interest of defendant in CEDAR COMMONS, a California Limited Partnership, or so much thereof as may be necessary to sell be sold at public auction in the manner prescribed by law by the sheriff of Fresno County, California, where the propery [sic] is situated, and that any party to this action may be a purchaser at such sale; the sheriff, after the time allowed by law has expired, shall execute an instrument transferring all of defendant's right, title and interest in and to his three percent (3%) interest in CEDAR COMMONS, a California Limited Partnership, in favor of the purchaser or purchasers at the sale;

"8. The proceeds of this sale shall be applied first, to the payment of sheriff's fees, disbursements and commissions on the sale; second, to the

payment to plaintiff of the total sum $271,167.70, for principal, interest and costs of suit, with interest thereon from the date of this decree at the rate of ten percent (10%) per annum; and if there be any surplus remaining after making these payments, he shall pay the same to defendant DAVID P. FANSLER, and if the proceeds of the sale be insufficient to pay the amount so found due to plaintiff, with interest, costs and expenses of sale, that plaintiff recover from defendant the amount of such deficiency, with interest thereon at the rate of ten percent (10%) per annum from the date of such sale.

"9. Defendant and all persons claiming under him, and all persons having liens subsequent to plaintiff's lien described in the complaint, by judgment, decree or otherwise, on the property described in the complaint, to wit, the three percent (3%) limited partnership interest of defendant DAVID P. FANSLER in and to CEDAR COMMONS, a California Limited Partnership, or their personal representatives, and all persons claiming under them, and all persons having any lien or claim by or under such subsequent judgment or decree, and their heirs and personal representatives, and all persons claiming under them, and all persons claiming to have acquired any estate, interest, or lien subsequent to the lien of plaintiff, as found in the findings of fact herein, be forever barred and foreclosed of, and from, all equity of redemption and claim in, of and to the property, to wit, the three percent (3%) limited partnership interest of defendant DAVID P. FANSLER in and to CEDAR COMMONS, a California Limited Partnership from and after the delivery of said sheriff's instrument of transfer."

In the meantime, appellant obtained a judgment against David in the United States District Court in the amount of $590,006.60. On November 30, 1987, David, by written agreement, assigned to appellant his interest in the limited partnership of Cedar Commons.

In December 1987 respondents noticed two motions in the superior court, one to charge the partnership interest of David in Cedar Commons with a lien which they contended was created by the judgment, and the other to declare the priorities of the creditors. The order of the court following hearing on these motions established creditor priority as follows: "First, D. PAUL FANSLER and THOMAS J. BERNARD to the full extent of their judgment herein, plus post-judgment interest at the legal rate; then,

"Second, D. PAUL FANSLER, to the extent of the amount he is owed pursuant to the 'Assignment'; then,

"Third, THE UNITED STATES OF AMERICA to the full extent of its judgment in United States District Court (Eastern District) Case No. CV-F-87-409-EDP, plus interest at the legal rate."

Appellant opposed the motions on several grounds, among them, that respondents were not entitled to equitable relief because (1) although their judgment was for the principal sum of $256,656.66, their damages were only the amount they were required to pay pursuant to their guaranties, approximately $12,000; (2) the settlement agreement between respondents and David provided that the collateral (David's interest in Cedar Commons) would secure only one of the two $125,000 loans; and (3) the parties mistakenly provided for a deed of trust to create a security interest, whereas a partnership interest is not subject to a lien created by a deed of trust. ■ Relying upon *Woodcock* v. *The Petrol Corp.* (1941) 48 Cal.App.2d 652 [120 P.2d 889], appellant urged the trial court to look beyond the face of respondents' judgment and to apply equitable principles in determining the order of priority among the creditors.

The court, however, rejected appellant's contention that it could consider facts other than the language of the judgment. At several points during the hearing on respondents' motions, the court stated: "But I don't think that— I have to go on the record I have before me, and the—Mr. David Fansler unfortunately is—by his nonappearance has created problems, I think, for you. . . .

" .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"And that, in fact, that is—because if those allegations had been challenged, I think we might be in a slightly different situation.

" .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"The record reflects otherwise. That's what I'm indicating. I think there was an equitable relief [*sic*] created back in 1985, that the plaintiffs' lien therefore should be given priority, and the SBA is going to have to take a—.

" .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"A lesser standing in this case. But it—it's an unusual situation because of the—the nonappearance. And I think that's—it limits my ability in this case to look through your substantive arguments.

" .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

". . . that you're somewhat at a disadvantage when there are certain things that are deemed admitted."

It is clear the court was of the opinion it had no discretion to examine the equities between the two contending creditors and it was bound by the specific provisions of the judgment of October 21, 1987, in favor of respondents.

The court was in error. It did have authority to look beyond the four corners of the judgment and to examine the equities as they existed between the competing creditors. That authority is found in *Woodcock* v. *The Petrol Corp., supra,* 48 Cal.App.2d 652.

*Woodcock* was an action in the form of a creditor's bill. Under former law, a creditor's bill was an independent suit against a third party to subject certain property to payment of the judgment creditor's claim. (8 Witkin, Cal. Procedure (3d ed. 1985) Enforcement of Judgment, § 284, p. 246.) Plaintiff, one of the principal stockholders of Big Ben Oil Company, obtained a judgment against the company for $20,000. In fact, no money was owed by Big Ben to plaintiff. The company was unable to defend itself because it had not paid its franchise tax to the State of California. Default judgment was entered in plaintiff's favor.

The court held that, in the action on a creditor's bill, the trial court was correct in going behind the $20,000 judgment and finding that the judgment was obtained for the purpose of defrauding creditors.

The *Woodcock* court made these comments in reaching its conclusion: ". . . It is unnecessary for either party to make objection; if a court of equity discovers that the transaction is tainted with fraud it will of its own motion institute an investigation thereof. [Citations.]

". . . In a suit in equity where fraud, oppression, or undue influence is charged, the court is not concluded [*sic*] by that which appears on the face of the record, but may inquire into the real facts relative to the transaction. [Citation.]" (*Woodcock* v. *The Petrol Corp., supra,* 48 Cal.App.2d at p. 656.)

Likewise, *Holstein* v. *Superior Court* (1969) 275 Cal.App.2d 708 [80 Cal.Rptr. 301], holds that an action by a judgment creditor against a person indebted to the judgment debtor is in the nature of a creditor's bill, and is an equitable action. It is independent of the action in which the judgment was obtained.

Accordingly, we hold, under the facts before us, the motions brought by respondents invoke the equitable jurisdiction of the court. Although we are not dealing with a separate lawsuit, as was the case in *Woodcock* and *Holstein,* the principles nevertheless are the same. And as *Woodcock* so

succinctly holds, the court is not limited in its determination to the four corners of the prior judgment. It must consider whether the circumstances surrounding the entry of the prior judgment render inequitable its enforcement by lien. ■ "[I]t is the duty of a court of equity, upon any suggestion that a plaintiff has not acted in good faith concerning the matters upon which he bases his suit, to inquire into the facts in that regard." (*DeGarmo v. Goldman* (1942) 19 Cal.2d 755, 764 [123 P.2d 1].)

Respondents contend that reversal of the trial court order is not warranted because appellant did not seek to introduce evidence in support of its assertion that its lien should have priority over at least a portion of the lien created by the debt in respondents' favor. However, the facts upon which appellant must rely are fully set forth in respondents' complaint against David upon which default judgment was taken. The complaint includes as an exhibit the settlement agreement. While we do not suggest to the trial court how it should determine the equities between the parties, we are convinced appellant has raised sufficient doubt concerning the judgment to entitle it to an examination of the equities.

The order establishing creditor priority is reversed and remanded for further hearing on the motion. Costs on appeal are awarded to appellant.

Woolpert, Acting P. J., and Best, J., concurred.